HARRIGAN LUMBER CO., INC., PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 17730-84.          Filed June 23, 1987.

*Robert C. Walthall*, for the petitioner.
*J. Craig Young*, for the respondent.

OPINION

WILLIAMS, *Judge:*[*] The Commissioner determined deficiencies in petitioner's Federal income tax for the taxable year ended September 30, 1978, in the amount of $9,311 and for the taxable year ended September 27, 1980, in the amount of $8,572.[1] After concessions by the parties, the sole issue this Court must decide is whether petitioner's deduction of payments for the hunting rights to a tract of land should be disallowed pursuant to section 274.[2]

The facts of this case have been fully stipulated and are so found. Petitioner is an Alabama corporation whose principal place of business was at Monroeville, Alabama, at the time its petition was filed. Petitioner operates a "chip-in-saw" mill in Monroeville, Alabama.

On a leased 10 acres of land (the 10-acre tract) on which it holds a purchase-option located in Monroe County, Alabama, petitioner constructed a hunting lodge. Petitioner

---

[*]By order of the Chief Judge, this case was reassigned to Judge Williams for decision and opinion.

[1]By amendment to his answer, respondent determined that the deficiency for petitioner's taxable year ended Sept. 27, 1980, was $8,942.

[2]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue, unless otherwise indicated.

operated and maintained the hunting lodge during the years 1980 and 1981.[3] The hunting lodge and the 10-acre tract constitute an entertainment facility within the meaning of section 274(a)(1)(B).

Petitioner leased from the R.B. Williams Co., Inc., the hunting rights on a tract of approximately 6,098 acres (the hunting area) for a period of 10 years, which commenced on March 1, 1979. The hunting area is located in Monroe County, Alabama, from 2 to 7 miles from the hunting lodge. Petitioner made lease payments for its hunting rights of $10,000.72 for its taxable year 1980, and of $10,000 for its taxable year 1981.[4] The lease for the hunting area states that the officers, employees, and guests of petitioner shall enjoy exclusive hunting rights, except with respect to members of the lessor's family identified in the lease. Petitioner must provide notice to the R.B. Williams Co., Inc., of planned hunts on the property.

The use of the hunting lodge and hunting area was directed primarily by petitioner's procurement forester, Don Robinson, during 1979, 1980, and 1981. Petitioner used the hunting lodge and hunting area principally for commercial purposes, to develop or maintain business relationships with its suppliers and customers. During its taxable years 1980 and 1981, petitioner invited to its hunting lodge representatives of some of its timber suppliers, such as Scott Paper Co., Georgia Pacific Corp., St. Regis Paper Co., and Prouty Forest Service, and individual landowners from whom it also bought timber. In addition, petitioner invited some of its customers to whom it sold its products. Petitioner used the hunting lodge, the hunting area, or both, on 30 separate occasions during the years at issue herein. Each use was for 1 to 2 days, at which representatives from one and sometimes two companies would attend. During its 1980 and 1981 taxable years, petitioner engaged in over $5 million worth of business with the companies whose representatives visited petitioner's hunting lodge.

---

[3]Although 1981 is not at issue, the lease payments deducted in that year are at issue as a carryback to 1978.

[4]The parties stipulated that "all activities" that took place on the hunting area were hunting or fishing. The record is silent on whether the landowner could use the area for farming, timbering, or other activities besides hunting.

The activities which took place at the hunting lodge, the hunting area, or both, during petitioner's taxable years 1980 and 1981 constitute entertainment, amusement, or recreation activities within the meaning of section 274(a)(1). On one occasion, petitioner concluded a verbal agreement with a representative of the Georgia Pacific Corp., pursuant to which petitioner sold "Plylogs" to, and purchased "sawlogs" from, Georgia Pacific.

On its Federal income tax returns for the taxable years 1980 and 1981, petitioner claimed deductions for its lease payments for the hunting rights made in 1980 and 1981, which respondent disallowed.

Petitioner argues that the hunting rights to the hunting area, leased from R.B. Williams Co., Inc., are intangible property rights and that intangible rights do not constitute a "facility" within the meaning of section 274(a)(1)(B). For the reasons discussed below, we agree with respondent that the hunting area constitutes a "facility" and that petitioner's lease payments for the hunting rights constitute an "item with respect to a facility" within the meaning of section 274(a)(1)(B). Because section 274(a)(1)(B) is an absolute bar to petitioner's deduction, we do not consider the merits of petitioner's further argument under section 274(a)(1)(A) that the lease payments for the hunting rights are expenditures "directly related to" or "associated with" the active conduct of its business within the meaning of section 274(a)(1)(A), and therefore are not disallowed.[5]

Section 274 was enacted to eliminate or curb perceived abuses with respect to business expense deductions for entertainment and travel expenses and for business gifts.[6]

---

[5]The parties do not dispute that the lease payments would be deductible pursuant to sec. 162 but for the restrictions of sec. 274. The evidence in the record is sufficient to establish that the lease payments were ordinary and necessary business expenses of petitioner's business. Petitioner's principal purpose in entertaining its suppliers and customers was to generate good will and to develop and maintain commercial relationships with the individuals involved. See sec. 162; sec. 1.162-1(a), Income Tax Regs. Petitioner's business benefited from the associations made during the events at the hunting lodge, hunting area, or both. Petitioner has conducted a substantial amount of business with the suppliers represented. See *Berkley Machine Works & Foundry Co. v. Commissioner*, 623 F.2d 898 (4th Cir. 1980), revg. a Memorandum Opinion of this Court (T.C. Memo. 1977-177).

[6]SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES.

(a) ENTERTAINMENT, AMUSEMENT, OR RECREATION.—

(1) IN GENERAL.—No deduction otherwise allowable under this chapter shall be allowed for any item—

See H. Rept. 1447, 87th Cong., 2d Sess. 19 (1962). Section 274(a)(1)(A) imposes additional requirements on the deduction, otherwise allowable under chapter I of the Internal Revenue Code of 1954, of an item with respect to an entertainment, amusement, or recreational activity. Section 274(a)(1)(B) strictly disallows the deduction, otherwise allowable, of an item with respect to a facility used in connection with such an activity.

What constitutes a facility is not self-evident from the statute. The legislative history and respondent's regulations state that a "facility" is "Any item of personal or real property owned, rented, or used by a taxpayer * * * if it is used * * * for, or in connection with entertainment" and includes such items as "yachts, hunting lodges, fishing camps, swimming pools, tennis courts, bowling alleys, automobiles, airplanes, apartments, hotel suites, and homes in vacation resorts." Sec. 1.274-2(e)(2), Income Tax Regs.;[7] see H. Rept. 1447, *supra* at 21. Of course, it is hard to conceive of any entertainment that does not involve an item of "personal or real property * * * used by a taxpayer." One "uses" a skybox at a sports stadium which is undoubtedly real property used by a taxpayer in connection with entertainment. Nevertheless, the legislative history specifically excludes the skybox from the meaning of

(A) ACTIVITY.—With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, or

(B) FACILITY.—With respect to a facility used in connection with an activity referred to in subparagraph (A).

In the case of an item described in subparagraph (A), the deduction shall in no event exceed the portion of such item which meets the requirements of subparagraph (A).

[7] We note that the heading to sec. 1.274-2(e), Income Tax Regs., reads "Expenditures paid or incurred before January 1, 1979, with respect to entertainment facilities or any time with respect to clubs." Prior to amendment in T.D. 8051, 1985-2 C.B. 88 (approved Aug. 5, 1985), the heading for this section read "Expenditures with respect to entertainment facilities." T.D. 8051 was adopted to conform the regulations to the amendments made to sec. 274(a) by sec. 361 of the Revenue Act of 1978, and sec. 103(a)(10) of the Technical Corrections Act of 1979, pursuant to which, as noted above, no deduction for expenditures paid or incurred after Dec. 31, 1978, with respect to an entertainment facility would be allowed. See note 11. As amended, however, the heading of sec. 1.274-2(e), Income Tax Regs., states that the entire section applies only to expenditures paid or incurred prior to Jan. 1, 1979. We do not believe the drafters of these regulations intended to exclude the guidance provided by sec. 1.274-2(e)(2) through (4), Income Tax Regs., in connection with expenditures paid or incurred subsequent to Dec. 31, 1978, with respect to entertainment facilities. For this reason, we apply sec. 1.274-2(e)(2) through (4), Income Tax Regs., to the years at issue in this case.

"facility." H. Rept. 95-1800 (Conf.)(1978), 1978-3 C.B. (Vol. 1) 584. The Conference report instead treats such an expense as subject to section 274(a)(1)(A).[8]

The distinction drawn by the Conference report between entertainment activities within the meaning of section 274(a)(1)(A) and entertainment facilities within the meaning of section 274(a)(1)(B) is fuzzy at best. We discern from the examples and discussion in the legislative history, however, that a material difference between an entertainment activity that includes the use of real or personal property and an entertainment facility is whether the property used for the entertainment is occupied exclusively by the taxpayer for or during the recreation or entertainment. For example, use of a skybox at the stadium would not constitute exclusive occupancy of the sports stadium where the entertainment takes place.

In this case, petitioner has exclusive right to use the hunting area for hunting, fishing, and other recreation.[9] Petitioner's exclusive lease of the hunting rights grants to petitioner, on prior notice, unfettered access to the hunting area (and a commitment that no hunting will occur for 2 days prior to petitioner's use). The hunting area is where the recreation takes place. During petitioner's recreation in the hunting area, petitioner has exclusive occupancy of the hunting area. Therefore, the hunting area is a facility used in connection with entertainment within the meaning of section 274(a)(1)(B).

Petitioner argues, however, that the lease payments are expenditures for an intangible property right which is separate and apart from the real property to which the hunting rights are attached, and therefore, such expenditures are out-of-pocket expenses, which are deductible pursuant to section 1.274-2(e)(3)(iii)(a), Income Tax Regs.[10]

---

[8]Congress, however, limited the deduction for skyboxes in enacting sec. 274(1)(2) of the Internal Revenue Code of 1986.

[9]Although certain family members of the controlling interest in the owner could use the land for hunting, their use was restricted as follows: (1) The use had to be personal, and (2) they could not hunt on the land while petitioner hunted there or during the preceding 2 days.

[10]Sec. 1.274-2(e)(3)(iii), Income Tax Regs., states in relevant part:

(iii) *Expenditures not with respect to a facility.* The following expenditures shall not be considered to constitute expenditures with respect to a facility used in connection with entertainment—

(a) *Out of pocket expenditures.* Expenses (exclusive of operating costs and other expenses referred to in subdivision (i) of this subparagraph) incurred at the time of an entertainment

Petitioner argues further that hunting rights were considered specifically by Congress which decided that they were expenses of an activity and not expenses "with respect to" a facility. The Conference report accompanying amendments to section 274(a)(1)(B) in the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, states:[11]

Moreover, the deductions for otherwise allowable business entertainment activities and business meals are not affected by this legislation. For example, if a salesman took a customer hunting for a day at a commercial shooting preserve, the expenses of the hunt (such as *hunting rights*, dogs, a guide, etc.) would be deductible provided that the current law requirements of substantiation, adequate records, ordinary and necessary, directly related, etc. are met. However, if the hunters stayed overnight at a hunting lodge on the shooting preserve, the cost attributable to the lodging would be nondeductible but expenses for any meals would be deductible if they satisfied the requirements of current law. * * * [H. Rept. 95-1800 (Conf.) (1978), 1978-3 C.B. (Vol. 1) 585. Emphasis supplied.]

In the above example, the expenditures for the hunting rights, which are considered to be part of an activity and not "with respect to" a facility, are for the nonexclusive use of a commercial hunting preserve for 1 day. The taxpayer has no control over the use of the property by others, no exclusive occupancy of the preserve for hunting, and no right to access the property beyond the limited time permitted. The expenditure thus viewed relates more to the entertainment activity than to the entertainment facility. Where the taxpayer is, however, granted exclusive use of and unfettered access to the property, the character of the expenditure changes. Instead of being an expense incurred solely in connection with the particular activity, it becomes an expense for the continuing enjoyment of the property, itself, for the specified recreational purposes. In this case, petitioner's payments gave it continuing, unfettered access to the property and exclusive occupancy in order to hunt,

activity, even though in connection with the use of facility for entertainment purposes, such as expenses for food and beverages, or expenses for catering, or expenses for gasoline and fishing bait consumed on a fishing trip;

[11]As originally enacted, sec. 274(a)(1)(B) allowed the deduction of expenses for a facility if the taxpayer established that such expenditures were directly related to his trade or business. Sec. 361 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2847, amended this provision to provide that the deduction of such expenditures would be disallowed in all circumstances. The amendment applies to items paid or incurred after Dec. 31, 1978, in taxable years ending after such date.

fish, and cook out. Moreover, these rights are meaningless apart from the hunting area to which they attach. Petitioner's payments were not made simply to acquire and hold "rights," but were made to enjoy the use of the property. Therefore, we reject petitioner's argument. The lease payments are an item "with respect to" a facility used in connection with entertainment within the meaning of section 274(a)(1)(B).

Accordingly, and to reflect concessions by the parties,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

STERRETT, SIMPSON, CHABOT, PARKER, WHITAKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, JACOBS, GERBER, WRIGHT, PARR, and WELLS, *JJ.*, agree with the majority opinion.

---

SWIFT, *J.*, concurring: I agree with the decision reached by the majority but would enunciate a different test in support thereof.

Rather than an exclusive-use test, I would hold that for purposes of section 274(a)(1) where a taxpayer purchases a long-term right to participate in an entertainment activity and where that right to participate is integral to the taxpayer's continued use of an entertainment facility, the right to participate should be regarded as part of the entertainment facility. Based upon that test and on the sparse facts before us in this stipulated case, I would hold that petitioner's hunting facility consisted of (1) the hunting lodge, (2) the leasehold interest in the 10-acre tract on which the lodge was located, and (3) the leasehold interest in the hunting rights on the nearby 6,098 acres.

---

JACOBS, *J.*, concurring: In view of the length of petitioner's exclusive right to use the hunting area (10 years), I agree with the result reached in this case. However, I do not agree that exclusivity per se suffices to characterize property as a "facility" for purpose of section 274(a)(1)(B). Adoption of such a per se rule would require us to hold that a banquet room used exclusively by the taxpayer and his

guests for part of a day is a "facility"—an issue which is not before us and a result which we are not now required to reach.

STERRETT and PARR, *JJ.*, agree with this concurring opinion.