STAN FRISBIE, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent WILLIAM S. FRISBIE, JR. and MIRIAM P. FRISBIE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stan Frisbie, Inc. v. Commissioner
Docket Nos. 36549-85, 36550-85
United States Tax Court
T.C. Memo 1990-419; 1990 Tax Ct. Memo LEXIS 436; 60 T.C.M. (CCH) 440; T.C.M. (RIA) 90419; August 6, 1990, Filed *436 Decisions will be entered under Rule 155. John B. Turner and Holly L. Smith, for the petitioners. Juandell D. Glass, for the respondent. JACOBS, Judge. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION In these consolidated cases, respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Taxable Year
Petitioner
Ended
Deficiency
Sec. 6653(a)(1) [1]
Stan
10/31/81
$ 30,851.84
$ 1,542.59
Frisbie, Inc.
10/31/82
$ 21,832.16
$ 1,091.60
William S. Jr.
12/31/78
$  1,806.00
$    90.30 *
and Miriam P.
12/31/80
$ 70,877.42
$ 3,543.87 *
Frisbie
12/31/81
$ 38,885.88
$ 1,949.29
Additions to Tax
Sec. 6653(a)(2)
Sec. 6661
Stan
**
--
Frisbie, Inc.
**
$ 2,183.22 [2]
William S. Jr.
--
--
and Miriam P.
--
--
Frisbie
**
--
*437 After concessions, [3] the issues for decision are: (1) whether expenditures incurred by corporate petitioner Stan Frisbie, Inc. for the purchase and operation of a 50-foot sailboat are deductible business expenses; and if not, (2) whether William S. Frisbie, Jr., the sole shareholder of Stan Frisbie, Inc., is chargeable with the receipt of constructive dividends for the expenditures made by his wholly owned corporation (i.e., Stan Frisbie, Inc.); (3) whether both the individual and corporate petitioners are liable for the additions to tax under section 6653(a)(1) and (2); and (4) whether Stan Frisbie, Inc. is liable for the addition to tax under section 6661. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of facts and accompanying exhibits are incorporated herein by this reference. William S. Frisbie, Jr. (Frisbie) *438 and Miriam P. Frisbie, husband and wife, resided in Tulsa, Oklahoma, at the time they filed their petition. Miriam Frisbie is a party herein solely by virtue of having filed a joint return with her husband. Stan Frisbie, Inc. (SFI), an Oklahoma corporation, maintained its principal place of business in Tulsa, Oklahoma, at the time it filed its petition. Frisbie was the president and sole shareholder of SFI during the years in issue. SFI has operated as a commercial real estate broker since its incorporation in 1979. Upon establishing SFI, Frisbie hoped to consummate "million dollar deals." He believes that in order for him to attract "those type of clients involved in large real estate transactions" he has to project an image of success and flair; thus, his lifestyle is (and has been) both lavish and flamboyant -- he drives expensive automobiles (such as Rolls Royce, Jaguar, Mercedes, etc.) and is a skydiver and a champion waterskier. In 1980, he decided that SFI needed to expand its business beyond the state of Oklahoma and that it should "establish a presence in Houston, Texas." He believed that in the real estate industry, Houston was a better market than Tulsa. In Frisbie's *439 opinion, Houston was and remains "the young men's capital of the world and probably [has] the best real estate investments in the country." Frisbie wanted his office in Houston to be not only "something different" but a "facility that could be used for both an office and in lieu of a hotel." He did not believe that having an office situated in a conventional office building would project the image he desired. While on a business trip, he attended a boat show in Ft. Lauderdale, Florida. At the show, he decided that using a sailboat as his Houston office would be in keeping with his image of being unique. Accordingly, on February 22, 1981, he signed an agreement to purchase a 50-foot Gulfstar cruising ketch to be delivered on April 3, 1981, for $ 260,594.79, of which $ 78,594.79 was paid as a deposit and the $ 182,000 balance was financed. On March 27, 1981, Contra el Viento, Inc. (CEVI), a Delaware corporation, [4] was formed as a wholly-owned subsidiary of SFI for the purpose of purchasing and owning the aforementioned 50-foot sailboat (boat or sailboat). (In Spanish, Contra el Viento means "against the wind"; Frisbie chose that name because, in his words, "I feel like I am against *440 the wind all the time.") On April 2, 1981, CEVI's board of directors approved the purchase of the sailboat and authorized Frisbie, in his capacity as CEVI's president, to enter into all agreements as may be necessary to purchase (and finance the purchase of) the boat on behalf of CEVI. On April 3, 1981, Frisbie executed a retail installment contract and security agreement (the Agreement) in connection with the financing for the boat. On the Agreement there were two alternative designations for the intended use of the boat -- one for "pleasure use" and another for "commercial or business use." An "x" was typed in for the "pleasure use" designation. Frisbie signed the Agreement in his individual capacity as purchaser without any reference to CEVI. On October 9, 1981, CEVI executed a first preferred ship mortgage in favor of Irving Trust Company (Irving Trust) covering the sailboat. Initially, SFI provided the funds, but CEVI made the mortgage payments to Irving Trust. At some point SFI rather than CEVI made the payments to Irving Trust. On U.S. Coast Guard Form *441 CG-1290, Consolidated Certificate of Enrollment and Yacht License, Frisbie, on behalf of CEVI, represented that the sailboat would be used exclusively as a pleasure vessel. Frisbie understood that if he classified the boat as a commercial vessel, pursuant to Coast Guard regulations, he would have to obtain a special license and hold the boat for hire. Upon taking delivery of the boat in April 1981, Frisbie docked it at Watergate Marina, located on Clear Lake outside of Houston, Texas. Initially, there was no telephone aboard the boat; therefore, Frisbie made arrangements to use the telephone in the marina office, which was located 100 yards from the boat. In 1983, the boat was moved to South Shore Harbor Marina, at which time a telephone was installed on the boat. Frisbie learned how to sail sometime after the boat was purchased and he occasionally used the boat for personal sailing trips. But he never travelled to Texas for the sole purpose of using the boat for his personal enjoyment. From 1981 through 1985, SFI made real estate sales of approximately 70 million dollars of which approximately 40 million dollars represented sales to Texans. On its consolidated income tax returns *442 (with CEVI) for its fiscal year ended October 31, 1981, and October 31, 1982, SFI deducted $ 63,633 and $ 103,721, respectively, for depreciation and expenses incurred in connection with the operation of the boat. In the notice of deficiency to SFI, respondent disallowed these deductions on the grounds that the expenditures were not shown to be ordinary and necessary and that they did not satisfy the requirements of section 274. In the notice of deficiency sent to the individual petitioners, respondent determined that for 1981 Frisbie received a constructive dividend of $ 104,353.69 as a result of the disallowed boat expenses. Such amount is comprised of a $ 78,594.79 down payment on the boat, monthly boat payments aggregating $ 15,621.90, and expenses of $ 10,137.00. OPINION 1. Sailboat Expenses
At the outset, we note that the various agreements executed in connection with the purchase and financing of the sailboat are somewhat inconsistent with respect to the boat's ownership, i.e., whether the sailboat was owned by Frisbie or CEVI. While petitioners were less than meticulous in their documentation of the transaction, we nevertheless conclude that the sailboat was corporate-owned. *443 Respondent maintains that the sailboat expenses are not ordinary and necessary; that the sailboat constitutes an "entertainment facility" under section 274(a)(1)(B); and that petitioners failed to adequately substantiate the sailboat expenses as required by section 274(d). On the other hand, SFI contends that the boat expenses were ordinary and necessary expenses incurred in its real estate business and thus deductible under section 162(a). It further contends that the sailboat expenses were not subject to the requirements of section 274 because the sailboat was not an "entertainment facility" within the meaning of section 274(a)(1)(B). Section 162 allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Section 162 is not an unrestrainted grant for taxpayers to deduct all expenses to support their flamboyant lifestyles. One cannot live "the life of Riley" and expect the Government to underwrite a part thereof through the entitlement of tax deductions. The United States Supreme Court and this Court have defined "ordinary" for purposes of section 162 to mean "normal, usual or customary." Deputy v. duPont, 308 U.S. 488, 496 (1940); *444 Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650, 660 (1962). The element of reasonableness is inherent in the phrase "ordinary and necessary." United States v. Haskel Engineering & Supply Co., 380 F.2d 786, 788-789 (9th Cir. 1967); Commissioner v. Lincoln Electric Co., 176 F.2d 815, 817 (6th Cir. 1949). We agree with respondent that the sailboat was purchased for the personal aggrandizement of Frisbie and that it was used to support his flamboyant lifestyle. Nonetheless, we believe some portion of the claimed sailboat expenses constitutes deductible business expenses under section 162. We need not, however, consider what portion qualifies as such since SFI has failed to establish that the sailboat was not an "entertainment facility" within the meaning of section 274(a)(1)(B). Section 274(a)(1)(B) as amended by section 361 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2847, and applicable to 1981, provides in pertinent part as follows: (a) ENTERTAINMENT, AMUSEMENT, OR RECREATION. -- (1) IN GENERAL. -- No deduction otherwise allowable under this chapter shall be allowed for any item -- * * * (B) FACILITY. -- With respect to a facility used in connection with an activity *445 referred to in subparagraph (A). The activity referred to in subparagraph (A) is "an activity which is of a type generally considered to constitute entertainment, amusement, or recreation." The term "facility" is not statutorily defined. However, the pertinent legislative history reveals that the term "facility" includes "any item of real or personal property which is owned, rented, or used by a taxpayer in conjunction or connection with an entertainment activity." Congress specifically included "yachts" within their conception of the term "facility". (By dictionary definition, a "yacht" is a boat that is ordinarily used for pleasure. ) The legislative history provides, however, that "the deduction [of expenses relating to a facility] is not affected unless the property is used in connection with entertainment." H. Rept. 95-1800 (Conf.) (1978), 1978-3 C.B. (Vol. 1) 521, 583-584; S. Rept. 95-1263 (1978), 1978-3 C.B. (Vol. 1) 315, 472-473; section 1.274-2(e)(2), Income Tax Regs. Thus, even though the sailboat is a "facility" for purposes of section 274(a) (1)(B), CEVI's and SFI's otherwise qualifying business expenses relating to the sailboat are not affected (i.e., are allowable) *446 unless the sailboat was used in connection with entertainment. In this regard, any entertainment use of the sailboat constitutes an absolute bar to deductibility of business expenses. Ireland v. Commissioner, 89 T.C. 978 (1987); Harrigan Lumber Co. v. Commissioner, 88 T.C. 1562 (1987), affd. without published opinion 851 F.2d 362 (11th Cir. 1988). Although Frisbie used the sailboat for business meetings and lodging attendant to business activities conducted while he was in Texas, he also used it for his own and his clients' personal sailing pleasure. Thus, section 274(a)(1)(B) operates as an absolute bar to the claimed deductions. Petitioners argue that no section 274 entertainment occurred because Frisbie's sailing with his clients was directly related to SFI's trade or business and was associated with SFI's business. In essence, they argue that the "directly related" and "associated with" exceptions found in section 274(a)(1)(A) [5] *447 are incorporated in section 274(a)(1)(B) as a result of the reference to subparagraph (A) contained in section 274(a)(1)(B). We disagree. If the "directly related" and "associated with" exceptions of section 274(a)(1)(A) were incorporated into section 274(a)(1)(B), as SFI suggests, the effect would be to replace the conjunctive test of 274(a)(1)(B) that existed before the 1978 amendment with the disjunctive test of 274(a)(1)(A). Such a result would enlarge the number of deductions escaping section 274 disallowance. And it would indeed be anomalous for Congress to lessen the restrictions on deductions relating to entertainment facilities when the stated reason for change was to disallow deductions for business expenses incurred with respect to entertainment facilities notwithstanding the fact that they may be legitimate business expenses. *448 [6] Section 274(a)(1)(B), as originally enacted in 1962, imposed restrictions on the deduction of expenses relating to entertainment facilities similar to, but more stringent than, those imposed on entertainment activities in section 274(a)(1)(A). Prior to 1978, section 274(a)(1)(B) provided that: *449 (1) IN GENERAL. -- No deduction otherwise allowable under this chapter shall be allowed for any item -- (B) FACILITY. -- With respect to a facility used in connection with an activity referred to in subparagraph (A), unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and the item was directly related to the active conduct of such trade or business, * * * [Emphasis added.]
The deductibility of expenses relating to entertainment facilities was further restricted when the emphasized portion of section 274(a)(1)(B) was deleted by the 1978 amendment; consequently, both the primary use of the facility, and the degree of the connection between the expense incurred thereon and the taxpayer's business, are no longer relevant. The 1978 amendment clearly indicates that section 274(a)(1)(B) disallows all expenses with respect to a facility if the facility is used to any extent for entertainment. Ireland v. Commissioner, supra at 981.Thus, we conclude that the exceptions for entertainment activities contained in section 274(a)(1)(A) are not incorporated in section 274(a)(1)(B). Petitioners further argue that the minimal *450 entertainment that occurred on the sailboat qualifies for the incidental use exception found in section 1.274-2(e)(2)(ii), Income Tax Regs. The incidental use exception contained in section 1.274-2(e)(2)(ii), Income Tax Regs., applies only to expenditures paid or incurred prior to January 1, 1979, as the result of the 1978 amendments to section 274 and conforming amendments to the regulations. Ireland v. Commissioner, supra at 984.Since the sailboat was purchased in 1981, the incidental use exception is not available here. Even if the substantive rules of section 274(a) had been satisfied, SFI must meet the substantiation requirements set forth in section 274(d). Under that section, petitioners must prove with adequate records or by sufficient corroborative evidence the amount of the expense or other item claimed, the time and place of the entertainment or use of the facility, the business purpose of the expense or item, and the business relationship to SFI of persons entertained or using the facility. They failed to do so. Petitioners did not maintain books or records of the business and personal use of the sailboat during the years in issue. Frisbie attempted to reconstruct *451 the business use of the sailboat several years after the fact by using telephone records and credit card receipts, which were not introduced into evidence. From such records, he attempted to determine the number of days he conducted business meetings on the sailboat or used the sailboat for lodging either before or after a business meeting. Based on his reconstruction, the sailboat was used 42, 87, 12, and 20 days in 1981, 1982, 1983, and 1984, respectively. Of the approximately 42 days in 1981 and 87 days in 1982 that the sailboat was used, Frisbie went sailing approximately 2 days with clients and 4 to 7 days without clients aboard in each year. His uncorroborated testimony at trial varied from his reconstructed log. In sum, the evidence presented fails to meet either the adequate records or corroborative evidence requirements. Sec. 1.274-5, Income Tax Regs.
Respondent's disallowance of the sailboat expenses and depreciation is sustained. 2. Constructive Dividends
We next address whether Frisbie received a constructive dividend in 1981 in the amount of $ 104,353.69 as a result of the disallowed sailboat expenses. He argues that the amount of such expenses should be characterized *452 as compensation rather than constructive dividends. We disagree. In 1981, Frisbie received compensation of $ 125,567 out of SFI's total gross receipts of $ 399,989. Nothing in the record indicates that such sum was not sufficient to constitute reasonable compensation. Moreover, nothing in the record suggests that SFI intended to pay Frisbie additional compensation. Taxpayers are bound to the form in which they cast their transactions. Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 148-149 (1974). It is well established that any expenditure made by a corporation for the personal benefit of its stockholders, or making corporate-owned facilities available to stockholders for their personal benefit, may result in the receipt by the stockholders of constructive dividends. Ashby v. Commissioner, 50 T.C. 409, 417 (1968); Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650, 663 (1962). There are two applicable standards for determining the amount of the constructive dividend. Acquisition cost paid by the corporation is the appropriate measure when the shareholder has title to the property; and fair rental value is the appropriate measure when the corporation *453 has title to the property. Nicholls, North, Buse Co. v. Commissioner, 56 T.C. 1225, 1240-1241 (1971). Respondent computed the amount of constructive dividends based upon the sailboat's acquisition cost plus the actual $ 10,137 expenses incurred in operating the sailboat.[7] Since CEVI was the owner of the sailboat, respondent's computation of the amount of constructive dividends is in error. The full amount of operating expenses should not be included in computing the amount of dividend income to Frisbie since the sailboat was used to a certain extent for corporate business purposes. Ashby v. Commissioner, 50 T.C. at 418.(The business expenses, however, are not deductible because of section 274.) Frisbie testified that the fair rental value of the sailboat was between $ 300 and $ 350 per day, and that he used the sailboat for personal purposes from between 4 to 7 days out of the total 42 days of sailboat usage during 1981. In our opinion, his claimed fair rental value of the sailboat, as well as the number of days claimed to be for personal *454 usage, are low estimates; accordingly, we have used his highest estimated amounts ($ 350 per day as the fair rental value of the sailboat and 7 days of personal use) in our computation. We conclude that Frisbie received constructive dividend income attributable to the fair rental value of the sailboat in 1981 in the amount of $ 2,450 (7 days' personal use of the sailboat at $ 350 per day). SFI failed to show that in 1981 it did not have earnings and profits sufficient to cover the dividend. Truesdell v. Commissioner, 89 T.C. 1280, 1295-1296 (1987).Accordingly, Frisbie must include $ 2,450 in income (as a dividend) in 1981. 3. Section 6653(a)(1) and (2) Additions to Tax
Next, we consider respondent's determinations that Frisbie and SFI are liable for additions to tax under section 6653(a)(1) and (2). Section 6653(a) provides for additions to tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Respondent's determinations are presumptively correct, and petitioners bear the burden of proving that the underpayments of tax were not attributable to negligence. Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989); Antonides v. Commissioner, 91 T.C. 686, 699 (1988), *455 affd. 893 F.2d 656 (4th Cir. 1990); Enoch v. Commissioner, 57 T.C. 781, 802 (1972); Rule 142(a). Petitioners contend that they relied on their certified public accountant to prepare their Federal income tax returns. As a general rule, the duty of filing accurate returns cannot be avoided by placing responsibility on a tax return preparer. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987); Pritchett v. Commissioner, 63 T.C. 149, 174-175 (1975).An exception to this rule exists where a taxpayer establishes that he supplied his accountant with complete and accurate information from which the tax returns could be properly prepared. Jackson v. Commissioner, 86 T.C. 492, 539-540 (1986), affd. 864 F.2d 1521 (10th Cir. 1989); Daugherty v. Commissioner, 78 T.C. 623, 640-641 (1982). SFI treated the sailboat as if it were used entirely for business purposes despite the admitted personal use during the years in issue. Further, the use of the sailboat was not adequately documented in accordance with respondent's rules and regulations. We therefore conclude that petitioners failed to establish that they supplied their accountant with complete and accurate information. Petitioners *456 also argue this is an improper case for imposition of the section 6653(a) additions to tax, citing Ireland v. Commissioner, 89 T.C. at 985, where the section 6653(a) additions to tax were not imposed when deductions were disallowed under section 274. We disagree. In Ireland, we concluded that the depreciation deduction claimed was not due to negligence or intentional disregard of the Commissioner's rules or regulations. The gravamen of Ireland was the classification of a certain beach front property as an "entertainment facility" within the meaning of section 274(a)(1)(B). Substantiation of business usage was not an issue in Ireland. In contrast, here petitioners have disregarded long-standing rules and regulations by their failure to substantiate the claimed sailboat expenses. Such makes this case distinguishable from Ireland. Accordingly, we hold that petitioners have failed to prove that they are not liable for the additions to tax under section 6653(a)(1) and (2). 4. Section 6661 Addition to Tax
Finally, respondent determined that SFI was liable for an addition to tax under section 6661 for its fiscal year ended October 31, 1982. That section provides for a 25-percent addition *457 to tax for an underpayment attributable to a substantial understatement of income tax that is assessed after October 21, 1986, for returns the due date for filing of which is after December 31, 1982. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988).A substantial understatement is the greater of 10 percent of the tax required to be shown on the return or $ 10,000. Sec. 6661(b)(1)(B). The addition is proper unless there is substantial authority for the tax treatment accorded an item, section 6661(b)(2)(B)(i), or the tax treatment is adequately disclosed, section 6661(b)(2)(B)(ii). SFI has not shown that either exception applies. SFI cites section 1.6661-6, Income Tax Regs., for the proposition that the section 6661(a) addition to tax is waived if the taxpayer has reasonable cause and good faith for its understatement. This argument is flawed. The authority to waive the section 6661(a) addition to tax upon the requisite showing rests with the Secretary of the Treasury or his delegate, not with this Court. [8] *458 Sec. 6661(c). Respondent's determination with respect to this issue is sustained. To reflect the foregoing and the concessions of the parties, Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
*. for 1978 and 1979 the addition to tax is under section 6653(a).↩
**. 50 percent of the interest on the underpayment of tax.↩
2. By an amendment to his answer, respondent increased the section 6661(a) addition to tax to $ 5,458.04 (25 percent of the underpayment). Pallottini v. Commissioner, 90 T.C. 498↩ (1988).
3. At trial, the parties orally agreed that in connection with an issue identified as "the First Western Government Securities project issue," they would be bound by "the ultimate outcome of the First Western Government Securities test case." See Freytag v. Commissioner, 89 T.C. 849 (1987), affd. 904 F.2d 1011↩ (5th Cir. 1990).
4. The creation of the Delaware corporation was a means to avoid the payment of Texas sales taxes on the purchase of the boat.↩
5. Section 274(a)(1)(A) provides: (1) IN GENERAL. -- No deduction otherwise allowable under this chapter shall be allowed for any item -- (A) ACTIVITY. -- With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, * * *.↩
6. The Senate report accompanying the Revenue Act of 1978 states that the reasons for change were that the treatment of expenses relating to entertainment facilities before the 1978 amendment could have encouraged some taxpayers to attempt to deduct items representing nondeductible personal expenses as business expenses, which, in some instances, represented substitutes for additional compensation. Furthermore, the complexity of the prior provisions made effective administration and uniform application of the law extremely difficult and provides significant opportunities for abuse. Consequently, and notwithstanding the fact that the committee recognizes that some legitimate business expenses may be incurred with respect to entertainment facilities, the committee believes that such expenses should be disallowed as business deductions." S. Rept. 95-1263 (1978), 1978-3 C.B. (Vol. 1) 315, 472.↩
7. If any of the disallowed expenses are allowable by reason of section 274(f), we expect the parties to so specify in their Rule 155 computation.↩
8. Since petitioners have not argued that respondent abused his discretion in refusing to grant a waiver under section 6661(c), we need not address the issue. Mailman v. Commissioner, 91 T.C. 1079↩ (1988).