T.C. Memo. 1996-95


UNITED STATES TAX COURT


ON SHORE QUALITY CONTROL SPECIALIST, INC., Petitioner
v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7496-94.                    Filed March 4, 1996.


Harry E. Caylor III (an officer), for petitioner.

Joni D. Larson, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

POWELL, Special Trial Judge:  This case was assigned pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183.[1]

Respondent determined deficiencies in petitioner's Federal income taxes for the fiscal years ending August 31, 1991 and

---

[1]  All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

August 31, 1992, in the amounts of $2,717 and $3,120, respectively.

The sole issue is whether section 274(a)(1)(B) disallows deductions for payments incurred in leasing property used for hunting game.

### FINDINGS OF FACT

On Shore Quality Control Specialist, Inc. (petitioner or On Shore) is an oil and gas pipeline inspection company. Eddie H. Hooks, Jr. (Mr. Hooks) was the president of On Shore during the years at issue. At the time of filing the petition, petitioner's principal place of business was Austin, Texas.

Robert C. Carr (Mr. Carr) leased a 1,700-acre ranch (the ranch) from Texas A&M University located west of Austin, Texas, in the so-called Hill Country. Mr. Carr raised cattle on the ranch. The lease entitled Mr. Carr to sublet the ranch for cattle grazing or hunting. In 1979, petitioner, through its agent, entered into an oral agreement (the hunting lease) with Mr. Carr under which petitioner received the right to hunt on the ranch. The lease has been renewed yearly, or more precisely, from hunting season to hunting season. The property includes a cabin that petitioner used. Petitioner invited business customers to go hunting on the property.

Mr. Carr did not lease the ranch to anyone other than petitioner.[2] However, under the understanding with petitioner, while the record is somewhat unclear, some friends and business acquaintances of Mr. Carr could also hunt on the ranch.[3] Because the hunting was on a working cattle ranch, Mr. Hooks notified Mr. Carr prior to each hunt. In addition, when friends of Mr. Carr were hunting on the ranch, they were required to notify Mr. Hooks, typically by stopping by the cabin prior to hunting. Generally Mr. Hooks included them in his hunting plans.

Petitioner was responsible for the cleaning and maintenance of the property and the cabin. The cabin was somewhat Spartan, but petitioner installed a wood heating stove, refrigerator, and microwave. Frequently hunters spent the night in the cabin. Petitioner also built and maintained hunting blinds or stands. Generally, petitioner used the ranch on weekends during the hunting season. Mr. Hooks would go to the ranch on Wednesday, clean the cabin and stands, and purchase the necessary food and beverages. The hunters would generally arrive on Friday and leave on Sunday.

---

[2] In the past, the ranch had been subject to poaching. Mr. Carr felt, and history proved, that petitioner's presence on the ranch deterred poachers.

[3] While Mr. Hooks testified that people other than petitioner's guests would "come in and hunt on occasion", he also testified that he allowed them to hunt with petitioner's guests.

During the 1991 and 1992 taxable years petitioner paid $10,000 for the lease of the ranch. Petitioner deducted, as entertainment expenses, the $10,000 lease payment for each year at issue. In the notice of deficiency, respondent determined that the lease payments were not deductible, pursuant to section 274(a)(1)(B), because they were made with respect to a facility.

OPINION

Section 162(a) allows a deduction for all ordinary and necessary expense incurred in carrying on a trade or business. There is no dispute that petitioner's expenditure for the hunting lease satisfies the requirements of section 162(a). That, however, does not end the matter. Section 274(a)(1)(A) provides that no deduction is allowable with respect to an activity of a type generally considered to constitute entertainment "unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion * * *, that such item was associated with, the active conduct of the taxpayer's trade or business". Section 274(a)(1)(B) is more draconian and prohibits any deduction for any item "With respect to a facility used in connection with an activity" which is of a type generally considered to constitute entertainment, amusement, or recreation. Thus, where (1) there is a facility, (2) the facility is used in connection with an activity that constitutes entertainment, and

(3) there is an item (including an expenditure) with respect to the facility, section 274(a)(1)(B) bars a deduction for that item irrespective whether the requirements of section 274(a)(1)(A) are satisfied. Petitioner contends that the expenses for the hunting lease constitutes an activity under section 274(a)(1)(A) and that it satisfied the provisions of that subsection. Respondent, on the other hand, contends that the lease constitutes a facility and the heavier gun of section 274(a)(1)(B) applies.

The term "facility" is not defined in the statute; however, the regulations provide that:

> Any item of personal or real property owned, rented, or used by a taxpayer shall * * * be considered to constitute a facility * * *. Examples of facilities which might be used for, or in connection with, entertainment include yachts, hunting lodges, fishing camps, swimming pools, tennis courts, bowling alleys, automobiles, airplanes, apartments, hotel suites, and homes in vacation resorts. [Sec. 1.274-2(e)(2)(i), Income Tax Regs.; emphasis added.]

An objective test is used to determine whether an activity constitutes entertainment,[4] and if an activity is generally considered to be entertainment, it will constitute entertainment within the meaning of the statute, regardless of whether the expenditure could be described otherwise. Sec. 1.274-2(b)(1)(ii), Income Tax Regs. Operating costs, such as rent,

---

[4] Under the regulations the term "entertainment" means "any activity which is of a type generally considered to constitute entertainment, amusement, or recreation, such as entertaining * * * [inter alia] on hunting * * * trips". Sec. 1.274-2(b)(1)(i), Income Tax Regs.

constitute expenditures with respect to a facility. Sec. 1.274-2(e)(3), Income Tax Regs.

Applying these principles to the facts here, the ranch for which the expenditures were made clearly appears to be a "facility". It is an item of real property rented (or used) by petitioner. Sec. 1.274-2(e)(2), Income Tax Regs. It was used by petitioner for hunting. Hunting generally constitutes recreation. See id. The expenditure (rent) made by petitioner each year to obtain the use of the ranch is an operating expense and, therefore, constitutes an item with respect to the facility. Sec. 1.274-2(e)(3), Income Tax Regs. Accordingly, section 274(a)(1)(B) disallows the deduction taken each year for the rent paid with respect to the hunting lease.

Petitioner, however, argues that the ranch does not constitute a "facility" because the hunting lease did not grant petitioner the "exclusive use" of the ranch, citing our opinion in Harrigan Lumber Co. v. Commissioner, 88 T.C. 1562 (1987), affd. without published opinion 851 F.2d 362 (11th Cir. 1988). In Harrigan the taxpayer leased property for hunting. The lease provided that the taxpayer's "officers, employees, and guests * * * shall enjoy exclusive hunting rights," except that certain members of the lessor's family were also entitled to hunt on the ranch. Id. at 1563. The taxpayer argued that "hunting rights * * * are intangible property rights and * * * do not constitute

a 'facility' within the meaning of section 274(a)(1)(B)", but rather should be considered to be an activity under section 274(a)(1)(A).  Id. at 1564.  We recognized that to a certain degree the distinctions between a facility and an activity were sometimes difficult to draw.  Nonetheless we reasoned that

> petitioner has exclusive right to use the hunting area for hunting, fishing, and other recreation. Petitioner's exclusive lease of the hunting rights grants to petitioner, on prior notice, unfettered access to the hunting area * * *.  The hunting area is where the recreation takes place.  During petitioner's recreation in the hunting area, petitioner has exclusive occupancy of the hunting area.  Therefore, the hunting area is a facility used in connection with entertainment * * *  [Id. at 1566; fn. ref. omitted.]

Petitioner misconceives the parameters of the exclusive use discussion in Harrigan.  The exclusivity language refers to the right of the lessee to bar the general public, and not a limited number of persons covered by a lease, from participating in the recreation.  Indeed, in Harrigan the lease provided that members of the lessor's family could hunt the property.  This is also apparent from the example in the legislative history, referred to in Harrigan, in which a deduction is allowed for an expenditure for 1 day at a commercial shooting preserve that is opened to the public.  See H. Conf. Rept. 95-1800 (1978), 1978-3 C.B. (Vol. 1) 585.[5]  In that example the taxpayer had no control over the use

---

[5]  H. Conf. Rept. 95-1800, at 251 (1978), 1978-3 C.B. (Vol. 1) 521, 585, states:

(continued...)

of the property.  "Where the taxpayer is, however, granted exclusive use of and unfettered access to the property the character of the expenditure changes."  <u>Harrigan Lumber Co. v. Commissioner</u>, <u>supra</u> at 1567.

The precise line between exclusive and nonexclusive use may be difficult to draw.  However, where the taxpayer, as here and in <u>Harrigan</u>, dominates the use of the hunting rights, we have no difficulty in finding that in substance the taxpayer enjoys the exclusive rights under the lease.  Accordingly, the hunting lease here in question falls within the definition of a "facility" in the statute and regulations.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.

---

[5](...continued)
For example, if a salesman took a customer hunting for a day at a commercial shooting preserve, the expenses of the hunt * * * would be deductible provided that the current law requirements of substantiation * * * are met.  However, if the hunters stayed overnight at a hunting lodge on the shooting preserve, the cost attributable to the lodging would be nondeductible * * *