114 T.C. No. 14


UNITED STATES TAX COURT


SUTHERLAND LUMBER-SOUTHWEST, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23936-97.      Filed March 28, 2000.

P provided its employees with the use of the
company-owned aircraft for nonbusiness flights.  P
notified its employees to report the value of the
flights as imputed income.  P deducted the expenses
incurred in providing the flights.  R, relying on sec.
274(e)(2), I.R.C., determined that deductions for
expenses incurred in providing employees with
nonbusiness flights on a company-owned airplane are
limited to the amount reported as imputed income to the
recipient employees.  P contends that its expense
deductions are not subject to sec. 274, I.R.C., or, in
the alternative, if subject to sec. 274, I.R.C., are
excepted from the restriction of sec. 274, I.R.C., by
application of sec. 274(e)(2), I.R.C.

<u>Held</u>:  Sec. 274(e)(2), I.R.C., excepts from the
effect of sec. 274, I.R.C., deductions of an employer's
expenses in connection with an entertainment facility
and does not limit or peg the amount deductible to the
amount reportable by employees; i.e., the value of the
benefit received.

Anne G. Batter, for petitioner.

Robert M. Fowler, for respondent.


OPINION

GERBER, Judge:  The parties filed cross-motions for partial summary judgment, seeking resolution of whether petitioner is allowed to deduct its expenses in operating its company aircraft for the benefit of employees or whether the deduction is limited to the value of the use of the aircraft--the amount reportable by petitioner's employees.  The parties' controversy raises the question of whether and how section 274[1] applies for petitioner's 1992 and 1993 taxable years.

Background

Petitioner is a corporation with its principal place of business in Kansas City, Missouri.  Petitioner's president and vice president are Dwight Sutherland (Dwight) and Perry Sutherland (Perry), respectively.  Petitioner is principally engaged in the retail lumber business with outlets located in eight Texas cities.  In addition to the retail lumber business, petitioner owned a 1976 Model 25 Lear Jet, which was used for travel related to the lumber business and for its air charter

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the taxable years under consideration, and Rule references are to the Tax Court's Rules of Practice and Procedure.

service business operated out of Kansas City. Dwight and Perry also used the plane for travel related to their positions as directors of other businesses (director's flights), for other business and charitable purposes (nonvacation flights), and for vacation travel (vacation flights). In 1992, the plane was used approximately 30 percent for charter business, 23 percent for director's flights, 18 percent for nonvacation flights, 24 percent for vacation flights, and 5 percent for other purposes. In 1993, the plane was used approximately 16 percent of the time for charter business, 16 percent for director's flights, 32 percent for nonvacation flights, 24 percent for vacation flights, and 11 percent for other purposes.

Use of the aircraft for director's flights, nonvacation flights, and vacation flights was reported by Dwight and Perry as compensation in connection with their employment with petitioner. Petitioner calculated and reported the amount of imputed income for Dwight and Perry in accord with the valuation formula provided in section 1.61-21(g), Income Tax Regs. Petitioner, in accord with section 162, deducted its costs incurred in operating the aircraft, including those flights taken for director's flights, nonvacation flights, and vacation flights. Respondent agrees that petitioner correctly applied and calculated the imputed income and associated deduction figures pursuant to

sections 61 and 162, leaving the applicability of section 274 as the only matter in controversy.

Respondent determined income tax deficiencies of $341,631 and $119,558 for petitioner's 1992 and 1993 tax years, respectively. The deficiency determinations were based on adjustments to deductions involving airplane expenses, net operating loss, environmental tax, alternative minimum tax, and contributions. Petitioner moved for partial summary judgment solely with respect to the disallowance of a portion of its claimed deduction for expenses to operate the aircraft, asking the Court to hold either that section 274 does not apply or, if section 274 applies, that section 274(e)(2) excepts petitioner from the provisions of section 274. If we decide that petitioner is correct with respect to either contention, petitioner's partial summary judgment motion will be granted.

Respondent, in his cross-motion for partial summary judgment, asks the Court to hold that section 274 is applicable and, further, that section 274(e)(2) limits petitioner's deduction to the value of the benefits received by employees with respect to the vacation flights. Likewise, if respondent's position is incorrect with respect to either contention, petitioner's partial summary judgment motion will be granted and respondent's denied.

Respondent conceded that petitioner is entitled to deduct the expenses for operating the aircraft for flights attributable to the lumber business, the air charter business, the nonvacation flights, and the director's flights.

## Discussion

The parties' cross-motions for partial summary judgment[2] involve employee fringe benefits.  Normally, answers to such matters may be found in sections 61, 162, 132, and related sections.  Here, however, we are confronted with the more vexing combination of those sections with section 274, which provides special rules for disallowance of certain deductions in connection with entertainment, amusement, or recreation activities.  Simplifying matters, the parties agree that the value of the vacation use of the aircraft is reportable by the employees as compensation and that petitioner is entitled to

---

[2] Rule 121(b) provides that summary adjudication upon all or any part of the legal issues in controversy may be rendered if the pleadings and admissions show that no genuine issue exists as to any material fact and that a decision may be rendered as a matter of law.  See Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988); Naftel v. Commissioner, 85 T.C. 527, 529 (1985).  The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment.  See Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Marshall v. Commissioner, 85 T.C. 267, 271 (1985).  The facts necessary to consider the questions presented here by each motion are contained in pleadings and other documents in the record and are not controverted.  Consequently, the issue herein is ripe for partial summary judgment.

deduct some amount in connection with that same use. We consider whether petitioner, under section 274, may deduct its aircraft operating costs in full or whether petitioner's deduction is limited to the amount reportable as compensation by the employees. In that regard, the parties agree that, without considering section 274, petitioner has correctly deducted its expenses incurred in operating the aircraft and notified its employees to report the value of the use of the aircraft.

Section 162(a) generally provides that a taxpayer is allowed a deduction for all ordinary and necessary expenses paid or incurred by the taxpayer in carrying on a trade or business. An expenditure is "ordinary and necessary" if the taxpayer establishes that it is directly connected with, or proximately related to, the taxpayer's activities. See Bingham's Trust v. Commissioner, 325 U.S. 365, 370 (1945). Deductions are a matter of legislative grace, and petitioner must prove that it is entitled to the claimed deductions. See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934).

As an ordinary expense of carrying on a trade or business, a taxpayer/employer may deduct expenses paid as compensation for personal services. See sec. 162(a)(1). If the compensation is paid in the form of noncash fringe benefits, section 1.162-25T, Temporary Income Tax Regs., 50 Fed. Reg. 747, 755 (Jan. 7, 1985),

amended 50 Fed. Reg. 46006, 46013 (Nov. 6, 1985), provides that an employer may take a deduction for expenses incurred in providing the benefit if the value of the noncash fringe benefit is includable in the recipient employee's gross income. See also sec. 1.61-21(b), Income Tax Regs. (employee is required to include in gross income the value of any fringe benefit received). The employer may not deduct the amount included by the employee as compensation but is required to deduct the employer's costs incurred in providing the benefit to the employee. See sec. 1.162-25T, Temporary Income Tax Regs., supra.

Some deductions previously allowable under section 162 were disallowed by the enactment of section 274, among other sections. Section 274 was enacted to eliminate or curb perceived abuses with respect to business expense deductions for entertainment and travel expenses and for gifts. See H. Rept. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 402, 423; S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 703, 730-731. Section 274(a)(1)(A) generally provides for the disallowance of deductions, otherwise allowable under chapter 1 of the Internal Revenue Code, involving an entertainment, amusement, or recreation activity. Section 274(a)(1)(B) disallows the deduction of otherwise allowable expenses incurred with respect to a facility used in connection with such an activity. See Harrigan Lumber Co. v. Commissioner,

88 T.C. 1562, 1564-1565 (1987), affd. without published opinion 851 F.2d 362 (11th Cir. 1988).

Although section 274(a) is designed generally to prohibit deductions for certain entertainment-related expenses, section 274(e)(2) provides that the deduction disallowance provision of section 274(a) will not apply to:

> Expenses treated as compensation.--Expenses for goods, services, and facilities, to the extent that the expenses are treated by the taxpayer, with respect to the recipient of the entertainment, amusement, or recreation, as compensation to an employee on the taxpayer's return of tax under this chapter and as wages to such employee for purposes of chapter 24 (relating to withholding of income tax at source on wages). [Emphasis added.]

Petitioner argues that the "to the extent" language acts to except its deduction, as claimed, from the reach of section 274. Conversely, respondent argues that the "to the extent" language acts to limit petitioner's deduction to the amount includable as income by its employees.

Respondent agrees that, but for section 274, petitioner's claimed deduction would be allowable in full. In addition, respondent does not challenge petitioner's fringe benefit income value calculations under section 61. Even on the assumption that section 274 applies, if we hold that subsection 274(e)(2) removes petitioner's deduction from the reach of section 274, then

petitioner prevails.[3]  Accordingly, we first address the parties'
arguments that focus on section 274(e)(2); i.e., whether it acts
as an exception or a limitation.

The section 274(e)(2) question is whether Congress intended
the words "to the extent that" to except taxpayers from section
274(a) or whether it limits a taxpayer's deduction to the amount
of income includable by the employee.  Generally, for purposes of
imputed employee fringe benefit income, the value of a benefit
received from use of corporate property is the fair rental value
of such property less any reimbursement.  See Ireland v. United
States, 621 F.2d 731, 737-739 (5th Cir. 1980); Loftin & Woodard,
Inc. v.  United States, 577 F.2d 1206, 1219 (5th Cir. 1978); Dole
v. Commissioner, 43 T.C. 697, 707 (1965), affd. 351 F.2d 308 (1st
Cir. 1965); Levy v. Commissioner, T.C. Memo. 1984-306.  Congress,
however, has provided specific valuation rates for certain
benefits, including employer-provided flights on noncommercial

---

[3] Because of our holding on the sec. 274(e) issue, we need
not and do not decide whether the aircraft in this case is a
"facility" used in connection with "an activity which is of a
type generally considered to constitute entertainment, amusement,
or recreation".  Sec. 274(a)(1)(A) and (B).  It would also
include deciding whether an aircraft, or the aircraft in this
case, is a transportation facility and/or which type of facility
it may primarily be.  The answer to that question would be
transitory in nature because the use could change on a year-by-
year basis.  Because of our holding on the sec. 274(e) issue, the
outcome in this case would be the same irrespective of our
holding on the broader question of whether sec. 274 applies.  In
addition, our holding in the context of sec. 274(e) provides a
universal answer to the controversy between the parties here.

aircraft, for purposes of computing the amount of income taxable to the employee.  See sec. 1.61-21(g), Income Tax Regs.  Such rates do not bear a correlation to the actual costs incurred by the aircraft's owner/operator.  Instead, the rates are derived from use of a percentage of commercial flight fares.  "[T]he multiples used are intended to approximate coach and first-class fares on commercial airlines (e.g., 125 percent of the SIFL [Standard Industry Fare Level] rates approximates coach fare and 200 percent of the SIFL rates approximates first-class fare)." 50 Fed. Reg. 52281, 52283 (Dec. 23, 1985) (prefatory language to sec. 1.61-2T, Temporary Income Tax Regs.).  The use of this bright-line approach can result in uneven or differing treatment.[4]  As a result, in some cases, such as the one under consideration, it is possible that an employee would be required to report a lower value as income while the employer would be allowed to deduct a higher cost amount.  The opposite result could also occur; i.e., the value of an employee's use or benefit is greater than the cost to the employer.  In that setting, the employer would be limited to deducting cost, even though the employee would be required to report income in excess of the allowable deduction.

---

[4] See 131 Cong. Rec. 7305-7310 (1985), wherein Senator Metzenbaum discussed the differences in the cost of travel in a small plane, which could be less than the SIFL value imputed as income, and in a luxury plane, which could be greater than the SIFL value imputed as income.

Section 274(e) is entitled "Specific Exceptions to Application of Subsection (a)". (Emphasis supplied.) Likewise, the legislative history contains references to "exceptions" in describing section 274(e)'s subsections. See H. Rept. 1447, supra, 1962-3 C.B. at 428; S. Rept. 1881, supra, 1962-3 C.B. at 742. More particularly, in connection with section 274(e), the legislative history contains the following statement:

> The bill contains nine exceptions to the general disallowance provision * * *. Where an expense falls within one of the enumerated exceptions, the item will continue to be deductible to the same extent as allowed by existing law.

H. Rept. 1447, supra, 1962-3 C.B. at 428; S. Rept. 1881, supra, 1962-3 C.B. at 742. Accordingly, section 274(e) was intended to except certain categories of deduction from the effect of section 274. Subsequent legislative history also references subsection 274(e) as providing for exceptions. See H. Rept. 99-426 (1985), 1986-3 C.B. (Vol. 2) 1, 118. ("If an exception [from subsection 274(e)] applies, the entertainment expenditure is deductible if it is ordinary and necessary and if any applicable section 274(d) substantiation requirements are satisfied.")

Collaterally, and by way of comparison, section 274(e)(9), concerning deductions for expenses for nonemployees, contains the "to the extent that" language. The legislative history concerning that subsection references subsection (e)(9) as an exception. See S. Rept. 96-498 (1979), 1980-1 C.B. 517, 545-546.

Those same congressional materials also contain an example of a manufacturer's allowing use of an entertainment facility by a nonemployee dealer. It provides that, as long as all reporting requirements are met, "the manufacturer will not be subject to these [deduction] limitations if the value of the entertainment facilities are includible in income of the dealer". Id. at 546. In other words, section 274 does not apply, and any restrictions are removed with respect to otherwise allowable deductions by employers as long as the value of the benefit is included in the nonemployee dealer's income.

Respondent also seeks support in the legislative history. Respondent contends that his interpretation of section 274(e) is supported by the purpose stated for section 274. We have already pointed out that section 274 was intended to curb the perceived abuses occurring with expense accounts and the resulting substantial tax-free benefits conferred on the recipients. H. Rept. 1447, supra, 1962-3 C.B. at 423. Respondent argues that the difference between the value and cost here confers benefits not intended by the enactment of section 274. Respondent's argument misses the mark for several reasons. Firstly, irrespective of section 274, the employees are being taxed in accord with the Internal Revenue Code for the benefits received, a fact with which respondent agrees. Secondly, petitioner, as employer, received no tax-free benefit. Thirdly, although

petitioner has deducted its expenses of operating the aircraft, that is no more or less than it was entitled to under section 162 and pertinent regulations.  Finally, the application of the benefit provisions requiring the reporting of the value of the benefit to the employee may result in the employee's reporting more imputed income than the employer is entitled to deduct. With little support for respondent's position, we find petitioner's interpretation of the "to the extent" language of section 274(e)(2) is more appropriate and more likely the one intended.

We also note that the section 274(e) regulations also refer to the section 274(e) subsections as exceptions.  See, e.g., sec. 1.274-2(f)(2), Income Tax Regs., listing the nine categories of expenditures similar to those listed in section 274(e).  One of those categories includes travel and entertainment expenses "to the extent that" they are treated as compensation.  Sec. 1.274-2(f)(2)(iii), Income Tax Regs.  Section 1.274-2(f)(1), Income Tax Regs., provides that the limitations on deductions for entertainment expenses are not applicable to the listed categories.  That regulation also provides that the expenditures in those categories shall be deductible to the extent allowable under chapter I of the Code.  See id.  These factors also support petitioner's interpretation of the subsection as an exception.

Other portions of section 274 have obvious caps or limitations on the amount of deduction available to taxpayers. For example, section 274(b)(1) limits deductions for gifts "to the extent that such expense * * * exceeds $25." Therefore, section 274(e)(2) could have been phrased "expenses are deductible to the extent that they do not exceed the amount of expenses treated as compensation" or "to the extent of the amount includible in an employee's income". Congress, however, did not use language that limits the amount deductible to the amounts includable.

There exist numerous other examples in the Internal Revenue Code where Congress intended to place limitations on particular items. Some are obvious and some more subtle. By means of slight yet significant modification to section 274(e)(2), a limitation, as opposed to an exception, could have been articulated. By changing "to the extent that" to "to the extent of", a limitation could have more unambiguously been placed. See secs. 119(d)(2), 125(d)(2)(B), 136(b), 165(d), 165(h)(2)(A), 170(d)(1)(A), 277(a), and 306(d)(2).

Section 83 is another example of a section expressly limiting the amount of an employer's deduction. Addressing the deduction available for property transferred for the performance of services, Congress restricted the amount of the deduction to "an amount equal to the amount included * * * in the gross income

of the person who performed such services". Sec. 83(h). These examples, the legislative history, and the above analysis convince us that Congress did not intend a limitation in section 274(e)(2).

As a final comment, we note that while respondent is critical of the mismatch of income and expense that could occur under petitioner's interpretation, respondent does not comment on the mismatch possible under his scenario if the costs associated with providing the flight are less than the SIFL value dictated by the Code. Moreover, respondent does acknowledge that the interaction of sections 61 and 162 in the benefits area already permits the possibility for mismatched income and deductions. There is no indication that Congress was attempting to fix any such possible mismatch by enacting section 274. To the contrary, the legislative history seems to indicate otherwise.

For the reasons outlined above, we hold that section 274(e)(2) acts to except the deductions in controversy from the effect of section 274, and, accordingly, petitioner's deduction for operation of the aircraft is not limited to the value reportable by its employees. In view of the foregoing, it is unnecessary to decide the general applicability of section 274(a) to the expenses of company-owned aircraft used for personal travel.

In light of the foregoing,

<u>An appropriate order will be</u>
<u>issued.</u>