James G. and Barbara L. ROBINSON,
Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 01–102T.

United States Court of Federal Claims.

June 24, 2002.

Samuel M. Maruca, Washington, DC, for plaintiff. Robert L. Moore, II, Miller & Chevalier, Chtd., of counsel.

G. Robson Stewart, Washington, DC, with whom was Assistant Attorney General Eileen J. O'Connor, for defendant.

### ORDER

MILLER, Judge.

This case is before the court after argument on defendant's motion to dismiss and the parties' cross-motions for summary judgment. Whether a taxpayer-employer's claim under 26 U.S.C. § 83(h) (2000), to deduct the value of property transferred to an employee is limited to the amount, if any, determined by the Internal Revenue Service (the "IRS") to have been included in the employee's gross income presents the ultimate legal issue. However, the ripeness of the taxpayer's claim is the antecedent inquiry, and defendant takes the position that plaintiff's claim cannot be addressed until the IRS makes the determination of the amount to have been included.

### FACTS

The following facts are undisputed. James G. and Barbara L. Robinson ("plaintiffs") own all of the issued and outstanding stock in a group of related S-corporations in the commercial film production business, collectively known as "Morgan Creek." From 1989 through 1997, Gary Barber was the Chief Operating Officer of Morgan Creek and, as such, was responsible for all of Morgan Creek's legal, financial, administrative, and other business. Pursuant to an employment agreement dated January 1, 1995, and a common stock subscription agreement entered into as of January 30, 1995 (the "Stock Agreement"), Morgan Creek renewed Mr. Barber's contract and transferred to him a restricted 10% ownership interest in Morgan Creek (the "stock").[1]

---

1. The Stock Agreement provided for various vesting schedules that represented a risk of forfeiture

26 U.S.C. (I.R.C.) § 83 (2000), governs the taxation of property transferred to an employee in connection with services provided by the employee. In general, such property is not taxable until it is has become "substantially vested" in the employee. I.R.C. § 83(a); Treas.Reg. § 1.83–1(a) (1978); Treas.Reg. § 1.83–3(a) & (b) (as amended in 1985). Once the property substantially vests, the employee must include in gross income in that year the excess of the current fair market value of the property over any consideration paid by the employee for the property (the "bargain element"). I.R.C. § 83(a). Accordingly, any appreciation in the property between the year of transfer and the year the property substantially vests is reported as ordinary income. Under section 83(b) the employee may elect to include the bargain element in gross income for the year in which the property is transferred (determined without regard to any restrictions on ownership). *See* Treas.Reg. § 1.83–2(a) (1978). If the employee so elects, any subsequent appreciation of the property is not considered ordinary compensation, but will be recognized as capital gain. *See generally Alves v. Comm'r*, 734 F.2d 478, 480–81 (9th Cir.1984) (discussing history, purpose, and operation of I.R.C. § 83); *Venture Funding, Ltd. v. Comm'r*, 110 T.C. 236, 239–40, 1998 WL 135152 (1998) (same), *aff'd*, 198 F.3d 248 (6th Cir.1999) (unpublished table decision).

In February 1995 Mr. Barber filed with the IRS an election under I.R.C. § 83(b) to include in income the bargain element of the stock. Mr. Barber indicated that the bargain element was zero, thereby positioning himself to recognize no income from the transfer and to claim capital gains treatment on any gain from the subsequent sale of the stock.[2]

By regulation, an employee who makes an election under I.R.C. § 83(b) must file a written statement with the IRS and submit a copy of that statement to the employer. Treas.Reg. § 1.83–3(c) & (d). The parties dispute when Morgan Creek was given notice of the election. Shortly after Mr. Barber filed his election, his attorneys provided Mr. Barber, in his capacity as Chief Operating Officer of Morgan Creek, with a copy of the election document. Defendant thus argues that, because Mr. Barber himself was an officer of Morgan Creek, an agent of Morgan Creek properly was advised of the election when it was made. Plaintiffs maintain that Morgan Creek first learned of Mr. Barber's I.R.C. § 83(b) election at the closing of a settlement agreement and mutual general release executed in June 1998 (the "Settlement Agreement"), in which Morgan Creek repurchased the then-vested portion of the stock (80% of the total shares) from Mr. Barber.[3] Plaintiffs insist that the first time an agent of Morgan Creek other than Mr. Barber learned of Mr. Barber's election was at the closing of the Settlement Agreement.

Morgan Creek subsequently issued amended 1995 Forms W–2 increasing Mr. Barber's wage income by $20,716,400.00 and paid the employer's share of employment taxes. The IRS audited Mr. Barber's 1995 tax return and, on or about December 14, 2001, issued an audit report proposing to increase Mr. Barber's gross income from wages by $26,759,800.00. The IRS has not finally determined Mr. Barber's 1995 tax liability.

On or about August 17, 1999, plaintiffs filed with the IRS an administrative claim for refund of 1995 income taxes, seeking deductions for additional compensation paid to Mr. Barber in 1995 and a tax refund of $7,626,575.00. On or about November 28,

to Mr. Barber in the event of an early termination of his employment.

2. The parties disagree with respect to the fair-market value of the stock at the time of the transfer without regard to the restrictions, and therefore disagree on the value of the bargain element of the stock. In consideration for the stock, Mr. Barber paid $2 million in cash and notes to Morgan Creek. Under the Stock Agreement, the stock's value was to be determined as a strict percentage of the value of Morgan Creek

and without regard to any discount for lack of marketability or minority status of the holder. Plaintiff estimates that the value of Morgan Creek at the time of the transfer was $288,000,000.00, which would translate to an ownership interest worth $28,800,000.00 to Mr. Barber and a bargain element of $26,800,000.00.

3. The purchase price of the Settlement Agreement was $13,200,000.00, based on an agreed value of $165,000,000.00 million for Morgan Creek.

2000, plaintiffs filed an amended administrative claim seeking and additional tax refund of $1,227,706.00 based on the same transaction. On February 27, 2001, plaintiffs filed a complaint in the Court of Federal Claims seeking recovery of overpaid income taxes in the amount of $8,854,281.00, plus interest. Defendant argues that plaintiffs are not entitled to a decision on their claim for a refund until a final determination has been made of the amount, if any, to be included in Mr. Barber's 1995 income.

## DISCUSSION

### 1. *Statutory framework and ripeness*

The question presented in this case is one of ripeness and, therefore, jurisdiction.[4] The "basic rationale" of the ripeness doctrine, according to the Supreme Court in *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967),

> is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Accord Disabled Am. Veterans v. Gober*, 234 F.3d 682, 690–91 (Fed.Cir.2000). Not untypically, however, whether this case actually presents a live controversy depends on an interpretation of the underlying statute.

I.R.C. § 83(h) provides:

> [T]here shall be allowed as a deduction under section 162 [to the employer] an amount equal to the amount included under subsection (a), (b), or (d)(2) in the gross income of the person who performed such services. Such deduction shall be allowed for the taxable year of such person in which or with which ends the taxable

year in which such amount is included in the gross income of the person who performed such services.

The critical word in this subsection is "included," and the critical question in this case is whether any amount has been included in Mr. Barber's gross income. *See Venture Funding*, 110 T.C. at 242 ("The statutory prerequisite to petitioner's deduction under section 83(h) is that the corresponding amount must be 'included' in its employees' income....."). If the amount included in the employee's gross income remains to be decided by another tribunal, it remains possible that the parties' dispute will resolve itself, for plaintiffs' complaint is predicated entirely on their fear that the IRS will determine, in the process of reviewing Mr. Barber's return, that Mr. Barber should have included less than the amount that plaintiffs claim as a deduction.

### 2. *Statutory meaning of "included"*

■ Because income tax deductions are a matter of "legislative grace," "they are strictly construed and allowed only 'as there is a clear provision therefor.'" *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84, 112 S.Ct. 1039, 117 L.Ed.2d 226 (1992) (quoting *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934)). "[T]he burden of clearly showing the right to the claimed deduction is on the taxpayer." *INDOPCO*, 503 U.S. at 84, 112 S.Ct. 1039.

■ The first step in construing a statute "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). The term "included" has just such a plain and unambiguous meaning in the tax code, one that distinguishes it from the term "includible." *E.g., Grant Oil Tool Co. v. United States*, 180 Ct.Cl. 620, 632, 381 F.2d

---

4. The ripeness doctrine is drawn both from Article III limitations on the judicial power and from prudential reasons for refusing to exercise jurisdiction. *See, e.g., Buckley v. Valeo*, 424 U.S. 1, 114, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam); *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 588, 92 S.Ct. 1716, 32 L.Ed.2d 317 (1972). Although not an Article III court, the Court of Federal Claims is vested with a "judicial

power," *Freytag v. Comm'r*, 501 U.S. 868, 889–90, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991), and has adjudicated cases on the basis that, except as Congress provides otherwise, its jurisdiction is similarly limited to "cases" or "controversies" and is subject to well-known prudential limitations, *e.g., Mass. Bay Transp. Auth. v. United States*, 21 Cl.Ct. 252, 257–58 (1990), *rev'd on other grounds*, 129 F.3d 1226 (Fed.Cir.1997).

389, 397 (1967); *Venture Funding*, 110 T.C. at 240–41 & n. 3, ; *id.* at 249–51 (Colvin, J., concurring); *see also Day v. Heckler*, 735 F.2d 779, 784 (4th Cir.1984) (distinguishing between "allowed" and "allowable"). I.R.C. § 83 requires that the employer's deduction equal the amount included in the employee's gross income and that it be taken in the year that ends the taxable year in which the employee included the amount in gross income. That the employee should have, or could have, included a particular amount in gross income in a particular year does not, on its own, trigger the allowance of a deduction.[5]

■ Both the Tax Court and the IRS recognize that, by the plain meaning of the term, an amount is "included" in a taxpayer's income when that amount is actually "taken into account in determining the tax liability of the employee for that year." *Venture Funding*, 110 T.C. at 240. Recognizing that I.R.C. § 83(h) requires an employer to "demonstrat[e] that an amount has actually been included," T.D. 8599, 1995–2 C.B. 12, 12, the IRS created a limited safe-harbor provision under which an employee is "deemed" to have included a particular amount in gross income, Treas.Reg. § 1.83–6(a)(2) (as amended in 2000).[6] Aside from the safe harbor, however, "the employer generally is required to demonstrate that the employee actually included the amount in income in order to support its deduction of the amount." T.D. 8599, 1995–2 C.B. at 13; *see also Sutherland Lumber–Southwest, Inc. v. Comm'r*, 114 T.C. 197, 205, 2000 WL 311132 (2000).

Plaintiffs concede that a final determination regarding Mr. Barber's 1995 income tax liability has not been made. They argue instead that the term "included" does not contemplate a final determination of the employee's tax liability. Plaintiffs rely primarily on language in the preamble of a 1995 amendment to the regulations implementing I.R.C. § 83:

> Under these regulations, the former general rule and special rule are replaced by a revised general rule that more closely follows the statutory language of section 83(h). The service recipient is allowed a deduction for the amount "included" in the service provider's gross income. For this purpose, the amount included means the amount reported on an original or amended return or included in gross income as a result of an IRS audit of the service provider.

Plaintiffs erroneously argue that, because the IRS has issued an audit report concerning Mr. Barber's income for 1995, the preamble's definition of "included" is satisfied. To the contrary, the preamble refers to an amount "included in gross income as a result of an IRS audit." The audit itself does not satisfy the preamble's definition of "included": The audit must result in an amount-certain included in the employee's gross income. Plaintiffs concede that this has not yet occurred.

Plaintiffs argue more generally that the essence of I.R.C. § 83's operation is not the actual inclusion of compensation in the employee's income, but notice to the IRS of the nature and amount of compensation. Plaintiffs reason that the purpose of the statute is satisfied when the IRS is made aware that property has been transferred as income and is put in a position to make any necessary adjustments to the tax liabilities of those involved. Plaintiffs again rely on the 1995 amendment to the implementing regulations,

---

**5.** Section 83(h) was added to the Tax Reform Act of 1969, Pub.L. No. 91–172, 83 Stat. 588, by a Senate amendment. The report of the Senate Finance Committee states: "The allowable deduction is the amount which the employee *is required to recognize* as income. The deduction is to be allowed in the employer's accounting period which includes the close of the taxable year in which the employee *recognizes* the income." S.Rep. No. 91–552 (1969), *reprinted in* 1969 U.S.C.C.A.N. 2027, 2155 (emphasis added). The Conference Report adopts the Senate amendment, indicating only that "[t]he amendment provides rules for deductions for the em-

ployer with respect to restricted property." H.R.Conf.Rep. No. 91–782 (1969), *reprinted in* 1969 U.S.C.C.A.N. 2392, 2418. Although the language used by the Senate Finance Committee supports plaintiffs' claim, *see Venture Funding*, 110 T.C. at 258, 261 (Ruwe, J., dissenting), the court nevertheless must apply the plain, unambiguous meaning of the statute. *E.g., Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984).

**6.** As discussed below, plaintiffs did not avail themselves of the safe harbor.

arguing that the events discussed in the preamble—submission of an original or amended return or an IRS audit—are not final determinations of an employee's tax liability, but, rather, are events that put the IRS in a position to discover and correct any discrepancy between the employer's and the employee's returns.

Again, plaintiffs overlook the fact that the preamble refers to inclusion "as a result" of an audit—not an audit itself. As such, the preamble informally describes the means by which a final amount to be included in gross income is determined. Unless the IRS determines that an audit is necessary, the taxpayer's return is essentially a "self-assessment," e.g., Laing v. United States, 423 U.S. 161, 191, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976), and any amount included as gross income on that return is the amount ultimately taken into account in determining the employee's tax assessment for that year, 26 U.S.C § 6201 (authorizing summary assessment of taxes shown on return); Venture Funding, 110 T.C. at 258 n. 3 (Ruwe, J., dissenting) ("The alternative to reporting as gross income on the employee's ... return would be an adjustment to gross income in a deficiency determination."); MICHAEL I. SALTZMAN, IRS PRACTICE & PROCEDURE ¶¶ 8.01, 10.01–10.03 (2d ed.1991) (discussing examination and assessment process). The preamble thus is consistent with the plain meaning of "included" applied in Venture Funding: "taken into account in determining the tax liability of the employee for that year." Venture Funding, 110 T.C. at 240.

The fact that this case involves restricted stock and an election under I.R.C. § 83(b) does not affect application of the plain meaning of "included." Subsection (b) contains no language that would qualify or avoid the requirement in subsection (h) that the deduction equal the amount included in the employee's gross income. The plain meaning of I.R.C. § 83(h), confirmed by the IRS's implementing regulations and applied by the Tax Court in Venture Funding, is that an employer is allowed a deduction only to the extent that an equal amount actually is included in the employee's gross income.

### 3. The role of notice

Plaintiffs may be correct that notice to the IRS adequately serves the purpose of I.R.C. § 83(h), which is to ensure consistent treatment of employers and employees. T.D. 8599, 1995–2 C.B. at 13. Nevertheless, "[t]he propriety of a deduction does not turn upon general equitable considerations, such as a demonstration of effective economic and practical equivalence." Comm'r v. Nat'l Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 148–49, 94 S.Ct. 2129, 40 L.Ed.2d 717 (1974). More fundamentally, this court is in no position to fashion alternate methods of accomplishing Congress's will. Whatever merit plaintiffs' arguments may have as a policy matter, they would circumvent—and therefore contradict—the scheme Congress has chosen.

Similarly, although the court appreciates the vulnerability of plaintiffs to the outcome of Mr. Barber's administrative appeals, the court cannot avoid the unambiguous language of I.R.C. § 83(h) on this basis. Under that statute an employer's deduction rests on "its employee's inclusion in income of a corresponding amount." Venture Funding, 110 T.C. at 240. Although several courts applying I.R.C. § 83 according to its terms have recognized the inequities created in particular circumstances, e.g., Sakol v. Comm'r, 574 F.2d 694, 700 (2d Cir.1978); Venture Funding, 110 T.C. at 242; Alves v. Comm'r, 79 T.C. 864, 878, 1982 WL 11194 (1982), aff'd, 734 F.2d 478 (9th Cir.1984), these courts consistently have refused "to create exceptions to the statute's coverage." Alves, 734 F.2d at 483. The result in this case is coherent, consistent with the Code's distinction between "included" and "includible," and, while unaccommodating of plaintiffs' reasonable concerns, is far from absurd.[7] Consequently, because the statute's language is plain, the court must enforce it according to its terms. See Hartford Underwriters Ins.

---

7. The court notes that an earlier version of the safe-harbor rule was available to plaintiffs when they negotiated Mr. Barber's employment contract. Moreover, plaintiffs were free to incorporate into the Stock Agreement their understanding of what Mr. Barber would report to the IRS and thereby fix any risk associated with his conduct.

*Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000); *Robinson,* 519 U.S. at 340, 117 S.Ct. 843.

#### 4. *Safe-harbor regulation*

As noted above, IRS regulations recognize that it is often difficult for an employer to ascertain whether its employees actually included an amount in income. T.D. 8599, 1995–2 C.B. at 12; *see also Venture Funding,* 110 T.C. at 242. Treas.Reg. § 1.83–6(a)(2): accordingly provides a safe harbor to employers through which they can claim a deduction regardless of whether the employee actually includes the amount in income. Under the safe harbor, if the employer timely satisfies I.R.C. §§ 6041 or 6041A, *i.e.,* files the appropriate form (usually a W–2) with the IRS reporting the compensation to the employee and furnishes a statement to the employee, the employee is "deemed" to have included the amount reported by the employer as income for purposes of I.R.C. § 83(h). *See also* Treas.Reg. §§ 1.6041–1, –2 (as amended in 2000) (describing mechanics of compliance).

Plaintiffs concede that they did not report the bargain element of the Stock Agreement as compensation in accordance with the safe-harbor rule. Plaintiffs instead request that the court read into the regulation a "reasonable cause" exception. The court finds no basis in the statute or the regulation for such an exception. As discussed above, the statute requires that the employer's deduction equal the amount included in the employee's gross income. The statute itself admits of no exception, whether for reasonable cause or otherwise. *Cf., e.g.,* I.R.C. § 6651(a) (imposing penalties for failure to file a return or pay tax "unless it is shown that such failure is due to reasonable cause"). In the safe-harbor provision, the IRS has provided one, and only one, qualification to the statute's general operation. The rule provides detailed instructions to employers on how to avail themselves of that safe harbor. This court is in no position to broaden that exception or to create additional exceptions.

#### CONCLUSION

Because plaintiffs' entitlement to a deduction for 1995 depends upon a final determination of the amount included in Mr. Barber's income, plaintiffs' claim is unripe. Accordingly, based on the foregoing, defendant's motion to dismiss pursuant to RCFC 12(b)(1) is granted, and the Clerk of the Court shall dismiss the complaint without prejudice as unripe.

**IT IS SO ORDERED.**

No costs.