James G. ROBINSON and Barbara L. Robinson, Plaintiffs–Appellants,

v.

UNITED STATES, Defendant–Appellee.

No. 02–5154.

United States Court of Appeals, Federal Circuit.

DECIDED: July 15, 2003.

Robert L. Moore, II, Miller & Chevalier, Chartered, of Washington, DC, argued for plaintiffs-appellants. With him on the brief were Samuel M. Maruca and Alan I. Horowitz.

Charles Bricken, Attorney, Tax Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief was Richard Farber, Attorney.

Before RADER, Circuit Judge, PLAGER, Senior Circuit Judge, and BRYSON, Circuit Judge.

BRYSON, Circuit Judge.

This appeal from the United States Court of Federal Claims requires us to construe section 83(h) of the Internal Revenue Code, a provision that addresses deductions for employers who use property

transfers (other than money) to compensate employees. That statute provides that the amount of the employer's deduction is "equal to the amount included" in the employee's gross income as a result of the transfer. The issue presented to us is whether the amount of the employer's deduction is the value of the transferred property that is includible in the employee's gross income as a matter of law or only the amount that is actually included in the employee's gross income. The Court of Federal Claims held that the amount of the employer's deduction under section 83(h) is limited to the value of the transferred property that is actually included in the employee's gross income, either on the employee's return or as a result of a final determination between the employee and the IRS that is binding on the employee. *Robinson v. United States,* 52 Fed.Cl. 725, 729 (2002). We disagree with that construction of the statute and therefore reverse.

I

Appellants James G. Robinson and Barbara L. Robinson are the sole shareholders of a group of related S-corporations collectively known as Morgan Creek. The tax consequences of an S-corporation flow through to the shareholders, so the shareholders recognize the corporation's income and expenses on their individual tax returns. 26 U.S.C. §§ 1363, 1366.

From 1989 to 1997, Gary Barber was the Chief Operating Officer of Morgan Creek and was responsible for all of the company's legal, financial, administrative, and other business affairs. In January 1995, Morgan Creek entered into an employment agreement with Mr. Barber that gave him a 10 percent ownership interest in the company. Under that contract, full ownership of the stock representing the 10 percent ownership share would vest gradually over time according to a schedule that would lead to partial forfeiture of his ownership rights in the event of early termination of his employment. Mr. Barber paid Morgan Creek $2 million as consideration for the stock.

Because the stock given to Mr. Barber was part of his salary, and because it was conveyed with restrictions on Mr. Barber's ownership rights, the tax treatment of the transfer of the stock is governed by section 83(a) of the Internal Revenue Code ("the Code"), 26 U.S.C. § 83(a). Section 83(a) provides that the transfer of property in connection with performance of services yields taxable income to the service provider in the amount of the excess of "the fair market value of such property" over "the amount (if any) paid for such property." That amount is known as the "bargain element" of the property transfer. Section 83(a) provides that the amount of the bargain element "shall be included in the gross income" of the service provider. *Id.*[1]

Section 83(a) addresses, inter alia, transfers that include restrictions on vesting or on retransfer of the property. In the case of property that is conveyed subject to such restrictions, the bargain element is ordinarily treated as income to the employee in the year that the employee's rights in the property are no longer "subject to a substantial risk of forfeiture." 26 U.S.C. § 83(a); *see also* Treas. Reg.

---

**1.** Section 83 applies to property transfers to any service provider, not just an employee, but because the service provider in this case was an employee, we refer in this opinion to the operation of the statute as it applies to employees and employers.

§§ 1.83–1(a), 1.83–3(a) & (b). It is then taxed as ordinary income. Section 83(b) of the Code, however, gives the employee the opportunity within 30 days of the transfer to elect to recognize the income in the year of receipt, notwithstanding the existence of restrictions on ownership. 26 U.S.C. § 83(b). By making that election, the employee is subject to immediate tax liability for the amount of the compensation. However, electing that option enables the employee to treat as a capital gain any appreciation in the value of the property between the time of the transfer and the time that the restrictions lapse. *See Venture Funding, Ltd. v. Comm'r,* 110 T.C. 236, 239–40, 1998 WL 135152 (1998), *aff'd,* 198 F.3d 248 (6th Cir.1999) (unpublished table decision).

Section 83(h) addresses the tax consequences to the employer of a property transfer made under section 83. With respect to value, section 83(h) states that the employer shall receive "a deduction" under section 162 of the Code in "an amount equal to the amount included under subsection (a), (b), or (d)(2) in the gross income of the person who performed the services."[2] 26 U.S.C. § 83(h). With respect to timing, section 83(h) states that the deduction "shall be allowed for the taxable year of such person ... in which such amount is included in the gross income of the person who performed such services." *Id.*

In 1995, Mr. Barber made a timely election under section 83(b) to include the bargain element of the Morgan Creek stock in his income for that tax year. However, because Mr. Barber represented that the $2 million that he paid for the stock reflected its fair market value—that is, that the bargain element of the transfer was zero—he did not report any income from the transfer. The Robinsons allege that Mr. Barber was incorrect to assign a zero value to the bargain element, because the $2 million payment represented only a small fraction of the stock's true value, which they contend was approximately $28.8 million at the time of the transfer.

Under Treasury Department regulations, Mr. Barber was required to file a copy of the section 83(b) election with his employer notifying the employer of his election. *See* Treas. Reg. § 1.83–2(c), (d). Because Mr. Barber was the chief operating officer of Morgan Creek, the person he notified was himself. Subsequently, in June 1998, Morgan Creek and Mr. Barber terminated their employer-employee relationship. As part of the separation agreement, Morgan Creek repurchased from Mr. Barber the portion of the stock that had vested. The purchase price was $13.2 million, based on an estimated company value of $165 million. At that point, the Robinsons discovered that Mr. Barber had made a section 83(b) election in 1995. As a result, Morgan Creek calculated the 1995 value of the property that had been transferred to Mr. Barber and issued corrected W–2 forms reflecting that value. The modification increased Mr. Barber's wage income by more than $20 million. Morgan Creek also paid the employer's share of the employment taxes for that compensation. The IRS has since audited Mr. Barber's 1995 tax return and issued an audit report proposing to increase his gross income by $26,759,800 based on a stock value of $28,759,800. However, the agency and Mr. Barber have not yet reached a final determination as to the amount, if any, by

---

**2.** Section 83(d)(2) addresses the cancellation of certain restrictions on property that will never lapse. 26 U.S.C. § 83(d)(2). It is not pertinent to this case.

which his gross income will be increased for purposes of calculating his 1995 tax liability.

In 1999 the Robinsons filed an administrative claim with the IRS seeking a refund of a portion of their 1995 taxes. They contended that because Mr. Barber made a section 83(b) election, Morgan Creek was entitled to deduct the bargain element of the stock transfer under section 83(h). When their administrative claim proved unsuccessful, the Robinsons filed suit in the Court of Federal Claims seeking a refund of overpaid income taxes in the amount of $8,854,281 plus interest. The Robinsons later moved for partial summary judgment, arguing that Morgan Creek was entitled to a deduction under section 83(h) for the compensation paid to Mr. Barber in 1995 and that the case should proceed to trial to determine the value of the stock. The government filed a cross-motion for dismissal or, in the alternative, for summary judgment on the ground that the case was not ripe for adjudication. In its summary judgment motion, the government contended that the Robinsons were not yet entitled to any deduction for the stock transferred to Mr. Barber because he had not included any amount in gross income on his 1995 tax return for receipt of that stock and the IRS had not made a final determination regarding the amount, if any, that Mr. Barber must include on that return.

The Court of Federal Claims granted the government's summary judgment motion. The court ruled that the value of transferred property is "included" in an employee's gross income, for purposes of the deduction allowed to the employer under section 83(h), only when that amount is actually taken into account in determining the tax liability of the employee for that year. *Robinson*, 52 Fed.Cl. at 727–28. The court noted that its interpretation was consistent with the applicable Treasury Regulation, which defines the amount "included" in the employee's gross income to mean "the amount reported on an original or amended return or included in gross income as a result of an IRS audit of the service provider," *Deductions for Transfers of Property*, 60 Fed. Reg. 36,995, 36,-996 (July 19, 1995), and with a decision of the Tax Court, which construed the term "included" in section 83(h) to mean the amount actually taken into account in determining the employee's tax liability, *Venture Funding*, 110 T.C. at 240. Merely because "the employee should have, or could have, included a particular amount in gross income in a particular year does not, on its own, trigger the allowance of a deduction," the court held. *Robinson*, 52 Fed.Cl. at 728.

The court also rejected the Robinsons' argument that they were entitled to invoke the "safe harbor" provision of the Treasury Regulation for section 83(h), which allows an employer to take a deduction based on the actual value of the transferred property if the employer satisfies all the pertinent reporting requirements "in a timely manner." Treas. Reg. § 1.83–6(a)(2). The court held that the Robinsons did not qualify for that exercise of administrative grace because their report of the 1995 stock transfer was untimely. Although the Robinsons argued that they filed corrected W–2 forms in 1998 as soon as they learned of Mr. Barber's election, the court refused to read into the regulation a "reasonable cause" exception for untimeliness, as urged by the Robinsons. Because Mr. Barber had not reported any gross income attributable to the bargain element of the stock transfer and because the Robinsons had not satisfied the re-

quirements of the safe harbor regulation, the court held that the Robinsons were not entitled to a deduction until and unless Mr. Barber's gross income for 1995 was increased either by amendment or by administrative resolution.

## II

■ The central issue on appeal is the meaning of the word "included" as used in section 83(h). That section provides:

> In the case of a transfer of property to which this section applies ... there shall be allowed as a deduction under section 162 [that is, for trade or business expenses], to the person for whom were performed the services in connection with which such property was transferred, an amount equal to the amount included under subsection (a), (b), or (d)(2) in the gross income of the person who performed such services. Such deduction shall be allowed for the taxable year in which such amount is included in the gross income of the person who performed such services.

26 U.S.C. § 83(h). The government argues that "the amount included ... in the gross income of the person who performed such services" means the amount actually included on the employee's tax return, while the Robinsons argue that the term "included," as used in section 83(h), refers to the amount included in the employee's gross income as a matter of law. For the reasons set forth below, we agree with the Robinsons.

The statutory context in which the term "included" is used supports the Robinsons' construction. Section 61 of the Code, the pivotal Code section that defines gross income, provides that "gross income means all income from whatever source derived."

26 U.S.C. § 61(a). Section 61(b) then states that "[f]or items specifically *included* in gross income, see part II (sec. 71 and following). For items specifically *excluded* from gross income, see part III (sec. 101 and following)." 26 U.S.C. § 61(b) (emphasis added). Because section 61 addresses gross income as a legal concept, the term "included" in section 61(b) plainly refers to items that are included in gross income as a matter of law or legally deemed to be included in gross income. Part II of the Code, to which section 61(b) refers, contains section 83. Thus, the statutory reference in section 61 to items that are "included in gross income" as a matter of law is powerful evidence that the same term was meant to have the same meaning in the cross-referenced section 83.

Significantly, other statutory provisions in the same portion of the Code also use the term "included" to mean "included as a matter of law." For example, section 79 provides that the cost of employees' group-term life insurance "shall be included in the gross income of employees," 26 U.S.C. § 79(a), and section 82 uses the same formulation in referring to reimbursement for moving expenses, 26 U.S.C. § 82. The government does not suggest that any deduction to employers for such expenses depends on whether the employees actually report those benefits on their tax returns. The same principle should presumably apply to the parallel provision in section 83. *See Venture Funding,* 110 T.C. at 259–60 (Ruwe, J., dissenting) (analyzing numerous Code provisions using variations of the word "include" and concluding that the word denotes benefits that are legally required to be treated as income).

The government argues that if Congress had intended for "included" to mean in-

cluded as a matter of law, it would have used the word "includible" or the phrase "should have been included." It is true that the Code uses the word "includible" in some instances to mean de jure inclusion. *See, e.g.,* 26 U.S.C. § 72(m)(3)(B) (noting that a contribution to a life insurance contract "is includible in the gross income of the participant" under specified circumstances); § 88 (mandating that certain amounts with respect to nuclear decommissioning costs "shall be includible" in the gross income of the taxpayer). As noted, however, the term "included" is often used to mean "included as a matter of law," and Congress has used a different formulation when it has meant to require that income actually be reported. For example, section 1367(b)(1) of the Code provides, "An amount which is required to be included in the gross income of a shareholder and shown on his return shall be taken into account under [other subparagraphs of this section] only to the extent such amount is included in the shareholder's gross income on his return." 26 U.S.C. § 1367(b)(1). If Congress had regarded the ordinary meaning of the term "included" to be "included on a tax return," there would have been no need in that provision to refer to the return after using the word "included."

The relationship between section 83(h) and section 162 of the Code provides further support for the Robinsons' construction of section 83(h). Section 162 is the general provision allowing a deduction for "all the ordinary and necessary expenses incurred during the taxable year in carrying on any trade or business," including "salaries or other compensation for personal services actually rendered." 26 U.S.C. § 162. Section 83(h) is directed to the same subject matter—a deduction for payments by a business for services—and

section 83(h) expressly provides that in the case of a transfer of property to which section 83 applies, "there shall be allowed a deduction under section 162" to the employer.

The amount of the deduction allowed under section 162 does not depend on the amount the employee reports as income; rather, the amount of the deduction is based on the value of the property transferred by the employer as of the time of the transfer. *See, e.g., Revenue Ruling,* Rev. Rul. 69–75, 1969–1 C.B. 52, 1969 WL 18899; *Revenue Ruling,* Rev. Rul. 62–217, 1962–2 C.B. 59, 1962 WL 13372. There is no logical reason for the amount of the deduction under the parallel provision of section 83(h) to be based on the reporting activity of the employee, rather than the fair market value of the transferred property, simply because the employee's rights in the transferred property may not vest immediately.

Besides being contrary to the approach employed under the cross-referenced section 162, the government's interpretation of section 83(h) is contrary to the legislative history and contemporaneous interpretation of section 83. When Congress passed the Tax Reform Act of 1969, which introduced section 83 into the Code, the Senate Finance Committee referred to the section 83(h) deduction as follows:

> The committee provided rules for the employer's deduction for restricted property given to employees as compensation. The allowable deduction is the amount which the employee is required to recognize as income. The deduction is to be allowed in the employer's accounting period which includes the close of the taxable year in which the employee recognizes the income.

S.Rep. No. 91–522, at 123 (1969), *reprinted in* 1969 U.S.C.C.A.N. 2027, 2155. The

Committee's use of the expression "the amount which the employee is required to recognize as income" indicates that the Committee intended the employer's deduction to be based on the amount includible in the employee's gross income, not the amount the employee actually reported on his income tax return. While the Committee report refers to the *timing* of the deduction in terms of when the employee actually recognizes the income, the *amount* of the deduction is clearly identified as the amount that the employee "is required to recognize as income."

Following the enactment of section 83, the report of the Joint Committee on Taxation confirmed the understanding of the basis for deductions under section 83(h) that was set forth in the Senate Committee report. *See* Staff of the Joint Committee on Internal Revenue Taxation, 91st Cong., *General Explanation of the Tax Reform Act of 1969,* at 112 (1970) ("The Act allows the employer a deduction equal to the amount which the employee is required to recognize as income."). Contemporaneous practitioner commentaries reached the same conclusion. *See* Joint Committee on Continuing Legal Education of the American Law Institute and the American Bar Association, *The Tax Reform Act of 1969,* at 120–21 (1970) (the section 83(h) deduction is equal to "the amount of compensation taxable to the person performing services" as opposed to the amount reported on the employee's tax return); Commerce Clearing House, *Explanation of the Tax Reform Act of 1969,* at 83 (1969) ("An employer transferring restricted property to an employee is entitled to a business deduction equal to the amount which the employee is required to report as income.").

The early regulatory history of the statute also supports the Robinsons' construc-

tion of section 83(h). In 1971, when the IRS first proposed a regulation relating to section 83(h), the proposed regulation allowed a deduction in "an amount equal to the amount included, under subsection (a), (b), or (d)(2) of section 83 as compensation, in the gross income of the person who performed such services." *Treatment of Property Transferred in Connection With Performance of Services,* 36 Fed. Reg. 10787, 10793 (proposed June 3, 1971). After notice and comment, the IRS revised the proposed regulation. The new version explicitly stated that the allowable deduction was "equal to the amount *includible* as compensation in the gross income of the service provider, under section 83(a), (b), or (d)(2)." *Treatment of Property Transferred in Connection With the Performance of Services,* 43 Fed. Reg. 31911, 31919 (July 24, 1978). The agency offered the following explanation for the change in wording:

> [A] deduction is allowed to the person for whom services were performed in an amount equal to the amount of compensation includible in the gross income of the person who provided the services, at the time the compensation becomes includible in the gross income of the person who performed the services. This timing rule is a change from the regulations as proposed in 1971, which allowed a deduction at the time an amount was actually included in gross income. This change was suggested by public comments to the regulations as proposed in 1971.

*Id.* at 31912. That version of the regulation was in effect until the IRS adopted the current version in 1995. The text and explanation of the regulation thus make clear that until relatively recently the IRS understood the term "included," as used in section 83(h), to mean "includible."

When the 1995 version of Treasury Regulation § 1.83–6(a) was published in the Federal Register, the IRS made the following statement in the preamble:

Under these regulations, the former general rule and special rule are replaced by a revised general rule that more closely follows the statutory language of section 83(h). The service recipient is allowed a deduction for the amount "included" in the service provider's gross income. For this purpose, the amount included means the amount reported on an original or amended return or included in gross income as a result of an IRS audit of the service provider.

60 Fed. Reg. at 36996. The government contends that this regulation sets forth the agency's contemporaneous understanding of the meaning of the statute and that we must defer to the regulation under the Supreme Court's decision in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We are mindful of the deference due to administrative agency interpretations of statutes contained in regulations that are the result of notice and comment rulemaking, *see Barnhart v. Walton*, 535 U.S. 212, 221–22, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002), a principle that is fully applicable to the Treasury Department's regulatory interpretations of the Internal Revenue Code, *see, e.g., United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 218–19, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001) ("[W]e defer to the Commissioner's regulations as long as they implement the congressional mandate in some reasonable manner." (internal quotation marks omitted)); *Fulman v. United States*, 434 U.S. 528, 536, 98 S.Ct. 841, 55 L.Ed.2d 1 (1978) (upholding a regulation that had a "reasonable basis" in the statutory history, even though the taxpayer's challenge to its policy had "logical force"). Nonetheless, if the meaning of the statute is clear, we have the responsibility to apply the statute as written, not to defer to a contrary regulatory interpretation. *See Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778. In this instance, the statutory language and other "traditional tools of statutory construction," *id.* at 843 n. 9, 104 S.Ct. 2778, lead us to conclude that Congress used the word "included" in section 83(h) to mean included as a matter of law. We therefore reject the contrary interpretation set forth in the present version of Treasury Regulation § 1.83–6(a).

The government contends that the Robinsons' interpretation of section 83 creates a "whipsaw" problem for the Internal Revenue Service. The government explains that if the employer and the employee disagree about the value of the bargain element of a section 83 transfer, the disputes could give rise to separately litigated cases, which could lead to decisions adverse to the government in both cases, resulting in the allowance of a deduction for the employer greater than the income recognized by the employee. While that outcome is possible, we think the similar "whipsaw" policy argument made by the Robinsons is even more compelling. The IRS can at least participate in the cases involving both the employer and the employee and thus can take steps to protect itself against an inconsistent result. The employer, however, has no standing to participate in a dispute between the employee and the IRS regarding the amount claimed by the employee as gross income from the section 83 transfer. Moreover, because any reduction in the amount claimed by the employee results in a reduction in the amount that can be deducted by the employer, the IRS would have little economic

incentive to insist on the employee reporting the full value of the transferred property. In that setting, the employer would be helpless to avoid a settlement between the IRS and the employee that significantly understated that value, and thus resulted in an artificially low deduction for the employer. Accordingly, we do not find the policy argument regarding possible "whipsaws" sufficient to persuade us to read the statute as the government urges. Instead, we conclude that the "whipsaw" argument cuts in favor of the employer's interpretation, not the government's.

### III

The Robinsons challenge the trial court's refusal to give them the benefit of the safe harbor provision of Treasury Regulation § 1.83–6(a)(2). They contend that because they filed corrected W–2 forms for the 1995 tax year as soon as they became aware of Mr. Barber's section 83(b) election, the safe harbor provision should be applied to give them the right to a deduction equal to the true value of the bargain element of the property transfer. Because we interpret section 83(h) to permit a deduction in the amount equal to the bargain element of the property transferred in connection with services irrespective of whether the employee actually reports the income, we do not need to consider whether the Robinsons are entitled to the protection of the regulatory safe harbor provision.

### IV

In sum, we reverse the trial court's decision and remand for a determination of the value of the Morgan Creek stock that was transferred to Mr. Barber. We recognize that our decision conflicts with language in the decision of the Tax Court (although that court was divided 9–8 on the issue), *see Venture Funding, Ltd. v. Comm'r,* 110 T.C. 236, 1998 WL 135152 (1998), which was affirmed by the Sixth Circuit in an unpublished ruling, 198 F.3d 248 (6th Cir. 1999), but we are persuaded by the arguments made by the Robinsons and by the dissenting judges of the Tax Court. We therefore conclude that the Robinsons are entitled to a deduction based on the amount that was legally required to be included in Mr. Barber's gross income, without regard to the amount that was actually included on his return or that Mr. Barber and the IRS ultimately agree should be included on that return for purposes of calculating his tax liability.

*REVERSED AND REMANDED.*